PEOPLE v TRAVIS

Docket No. 93072. Argued May 4, 1993 (Calendar No. 1). Decided
    September 8, 1993.

David R. Travis was convicted by a jury in the Oakland Circuit
    Court, Richard D. Kuhn, J., of breaking and entering with
    intent to commit larceny and of assault and battery. He subse-
    quently pleaded guilty of being an habitual offender, third
    offense. On appeal, the defendant argued that the admission of
    the testimony of two prosecution rebuttal witnesses despite
    failure of the prosecution to provide notice before trial denied
    him a fair trial. The Court of Appeals, SHEPHERD, P.J., and
    WAHLS and R. B. BURNS, JJ., affirmed in an unpublished opin-
    ion per curiam, concluding that the trial court had discretion to
    allow the untimely notice of rebuttal, even during the course of
    trial (Docket No. 121820). The defendant appeals.

In an opinion by Justice GRIFFIN, joined by Chief Justice
    CAVANAGH, and Justices LEVIN, BRICKLEY, BOYLE, and MALLETT,
    the Supreme Court held:

Although a trial court has some discretion under MCL
    768.20; MSA 28.1043 to admit rebuttal testimony offered by the
    prosecution when notice has not been filed before trial, a
    decision may be overturned on appeal if that discretion is
    abused.

1. The notice-of-alibi statute requires reciprocal discovery. A
    defendant intending to offer testimony in support of an alibi in
    a felony case must notify the prosecution at least ten days
    before trial. The prosecution has a duty to respond with a
    notice of rebuttal at least five days before trial or at such other
    time as the court may direct. The option preserves the trial
    court's discretion to fix the timeliness of notice in view of the
    circumstances and to allow rebuttal testimony, even where
    notice is not filed until after commencement of trial.

2. In exercising its discretion, a trial court should consider
    the amount of prejudice that resulted from the failure to
    disclose, the reason for nondisclosure, the extent to which the
    harm caused by nondisclosure was mitigated by subsequent
    events, the weight of the properly admitted evidence supporting

the defendant's guilt, and other relevant factors arising out of the circumstances of the case.

3. In this case, the trial court abused its discretion. The defendant's case was severely prejudiced; the only explanation offered for the prosecution's failure to provide notice of rebuttal was simple confusion; the harm caused by the failure to disclose could not be mitigated by subsequent events; the evidence supporting the defendant's guilt, while substantial, was not overwhelming; and the trial court's explanation of its decision was inadequate in light of the prejudice suffered by the defendant. Because it cannot be concluded that the conviction of the defendant was not a miscarriage of justice, reversal and remand for a new trial is required.

Justice RILEY, concurring, stated that the plain language of MCL 768.20; MSA 28.1043 viewed in its entirety delineates two pathways to grant sufficient notice of alibi witnesses: subsections 1 and 2 require notice before trial; subsection 3 permits late notice and endorsement of an alibi witness when the moving party shows that the name of the witness was unavailable at the time the notice was required and that it could not have been available by the exercise of due diligence. The purpose of the notice-of-alibi statute is to prevent the surprise introduction of an alibi defense and to prohibit the introduction of surprise prosecution rebuttal witnesses. Maintaining the due diligence standard does not defeat, but rather preserves the purpose of the notice-of-alibi statute.

In this case, the prosecutor clearly failed to comply with subsection 2. No notice was given until the middle of trial. Nor did the prosecutor meet the requirements of subsection 3 because the names of the witnesses were readily available before trial and would have been discovered in the exercise of due diligence. Obtaining and giving notice of the witnesses was within the realm of reasonable behavior and should not be excused to the detriment of the defendant.

Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Janice A. Kabodian,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Randy E. Davidson*) for the defendant.

GRIFFIN, J. The notice-of-alibi statute requires advance notice of a criminal defendant's intention to present alibi testimony in a trial of felony charges, as well as a corresponding notice of the prosecution's intent to offer evidence in rebuttal of that defense. MCL 768.20; MSA 28.1043.[1] Over defendant's objection, the trial court admitted the testimony of two rebuttal witnesses despite failure of the prosecution to provide notice before trial, and defendant then was convicted by a jury of breaking and entering with intent to commit larceny[2] and of assault and battery.[3] On appeal, the

---

[1]  (1) If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the defendant to establish that defense. The defendant's notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense.

(2) Within 10 days after the receipt of the defendant's notice but not later than 5 days before the trial of the case, or at such other time as the court may direct, the prosecuting attorney shall file and serve upon the defendant a notice of rebuttal which shall contain, as particularly as is known to the prosecuting attorney, the names of the witnesses whom the prosecuting attorney proposes to call in rebuttal to controvert the defendant's defense at the trial of the case.

(3) Both the defendant and the prosecuting attorney shall be under a continuing duty to disclose promptly the names of additional witnesses which come to the attention of either party subsequent to filing their respective notices as provided in this section. Upon motion with notice to the other party and upon a showing by the moving party that the name of an additional witness was not available when the notice required by subsections (1) or (2) was filed and could not have been available by the exercise of due diligence, the additional witness may be called by the moving party to testify as a witness for the purpose of establishing or rebutting an alibi defense.

[2] MCL 750.110; MSA 28.305.
[3] MCL 750.81; MSA 28.276.

Court of Appeals found fault with the prosecution, but concluded that defendant "was not denied a fair trial by the late filing," and affirmed the convictions.[4]

We granted leave to appeal and now reverse the decision of the Court of Appeals.

I

At about 5:30 A.M. on October 15, 1988, fifty-two-year-old Samuel Harmon was drinking a cup of coffee in his Hazel Park home when he heard a noise, looked around, and saw a man with a stocking over his head standing at the end of his kitchen table. When the intruder started toward him, Harmon jumped up and jerked the stocking off the intruder's head. During a struggle that ensued, Harmon was struck and almost lost consciousness. The intruder then tied Harmon's hands and gagged him. Harmon heard the intruder enter the bedroom and dump jewelry from his wife's jewelry box. While the intruder was in the bedroom, Harmon escaped to the house of a neighbor, who removed the restraints and called the police. Harmon described his assailant to police as a white male in his late twenties or early thirties, five feet eight inches tall, weighing between 160 and 180 pounds, wearing blue jeans, either a sweatshirt or T-shirt, and a black leather jacket.

A few days later, Harmon was asked to look at a book of photographs at the Hazel Park police department. He selected defendant's photograph from the book, and stated that it looked identical to his assailant except for differences in the hair and mustache. Thereafter, on December 14, 1988, defendant was arrested and charged with breaking

[4] Unpublished opinion per curiam of the Court of Appeals, decided November 20, 1991 (Docket No. 121820) at 1.

and entering with intent to commit larceny and
with assault and battery. Six days later, at his
preliminary examination, he was identified by
Harmon as the intruder and was bound over as
charged. His trial was scheduled for August 14,
1989.

Twenty days before the scheduled trial date,
defendant filed a written notice of his intent to
claim an alibi defense, naming one witness. How-
ever, the prosecution provided no response to this
notice before trial.

When trial began as scheduled on August 14,
1989, defense counsel reserved his opening state-
ment. The prosecution proceeded with its case in
chief, and Harmon again identified defendant as
the intruder. On the second day of trial, after the
prosecution rested, defense counsel delivered an
opening statement in which he informed the jury
that an alibi defense would be presented supported
by the testimony of two witnesses, Diane Deladu-
rantaye and Sherry Detzler.

Thereafter, Ms. Deladurantaye testified that on
Friday, October 14, she and defendant were at a
bar in Utica from about 10:00 P.M. until 2:30 A.M.
She drank soft drinks while defendant drank whis-
key. He was "[p]retty drunk" by the time they left
the bar and proceeded to her father's house, also
in Utica. There, defendant continued drinking
while they talked until 4:45 A.M. According to her
testimony, she left the house at 5:05 or 5:10 A.M.,
and defendant was "[o]ut cold." She claimed that
she returned between 7:30 and 7:45 A.M., awoke
defendant, and drove him to work. She described
defendant as "very hung over" and wearing a
brown work uniform, the same clothing he had
worn the night before.

Following the testimony of Ms. Deladurantaye
on Tuesday, August 15, the court declared a recess

of the trial. Because the next day, Wednesday, was
the regular motion day, the court scheduled the
trial to resume on Thursday, August 17. However,
on the intervening Wednesday, the prosecutor filed
a notice of intent to present witnesses to rebut
defendant's alibi.

When the trial resumed on Thursday, the de-
fense presented the testimony of its second wit-
ness, Ms. Detzler. She testified that she worked
with the defendant at a local manufacturing plant,
and that she saw him at work shortly after noon
on Saturday, October 15. She described his appear-
ance on that day as "severely hung over."

Following the testimony of Ms. Detzler, the de-
fense rested, and the trial prosecutor then moved
"to add a couple witnesses to the information to
rebut . . . the defense of alibi." In support of this
motion, he explained that when defendant's notice
of alibi was received in the prosecutor's office, it
had been handed to one of his colleagues to whom
the case was originally assigned. Apparently, that
person had not placed the notice in the case file
because it was not in the file when the case was
reassigned. The trial prosecutor maintained that
he did not learn of the defendant's intention to
present an alibi defense until August 14, the day
the trial opened. He further indicated that, on the
same day, he first learned from a police detective
that there were witnesses who could rebut the
alibi. He then interviewed one of these witnesses,
Renee Jones, on the morning of the second day of
trial.

Arguing that it would not be unfair for the trial
court to grant his motion and allow him to call the
rebuttal witnesses, the trial prosecutor pointed out
that the defense counsel was also able to interview
witness Jones on the second day of trial, and that
both he and defense counsel were in possession of

a statement made by a second rebuttal witness, Gregory Moore, Jones' brother. He also contended that the trial court was required to grant his motion by *People v Wilkerson,* 63 Mich App 470; 234 NW2d 571 (1975).

Defense counsel vigorously opposed the motion, arguing that he had filed notice of his alibi defense in accordance with the statute, and that there was no satisfactory excuse for the prosecution's failure to contact the alibi witness and to file a timely notice if he wished to offer rebuttal testimony. Characterizing the late motion as "sandbagging," he complained that the prosecution had waited until after the first alibi witness had testified before affording defense counsel any opportunity to interview rebuttal witnesses. Defense counsel argued that any confusion that may have existed in the prosecutor's office could not be charged against the defense, and that the trial prosecutor's conduct had prevented him from making an informed choice of trial strategy on defendant's behalf.

The trial court granted the prosecution's motion, finding that it would be "totally unjust" to exclude the testimony of the rebuttal witnesses.

The prosecution then presented the testimony of two rebuttal witnesses who lived in Hazel Park near the home of complainant Harmon. The first witness, Jones, testified that the defendant was at her house between 2:30 and 3:00 A.M. on the morning of the break-in. She stated that defendant was accompanied by her ex-husband, who was intoxicated, and that she observed defendant driving a truck with the words "Interlocking Block"[5] painted on the door. She described the defendant as wearing a black jacket, blue jeans, and tennis shoes.

---

[5] Interlocking block is a product sold by defendant's employer.

The second rebuttal witness, Moore, testified that he saw defendant walking down the street at 5:30 or 6:00 A.M. that morning. He said defendant was wearing dark clothing, but could not recall whether he was wearing a jacket.

The jury returned a verdict convicting defendant as charged. Thereafter, defendant pleaded guilty to a charge of being an habitual offender, third offense, and was sentenced to ten to thirty years in prison.

In the Court of Appeals, defendant argued that the notice-of-alibi statute requires the prosecution to demonstrate the exercise of due diligence in obtaining the names of rebuttal witnesses and filing the required notice of rebuttal. The appeals panel disagreed, concluding that "the trial court has discretion to allow the untimely filing of a notice of rebuttal, even if the filing occurs during the course of trial."[6]

We then granted leave to appeal, limited to: "whether the trial court erred in allowing the prosecutor to file the notice of rebuttal witnesses and to thereafter call those witnesses to rebut the alibi defense." 440 Mich 889 (1992).

II

A majority of states, as well as the federal courts, require advance notice of an alibi defense. 2 LaFave & Israel, Criminal Procedure, § 19.4, pp 511-512; see also note, *Constitutional implications of notice-of-alibi provisions,* 21 Wayne L R 1415 (1975).[7] Such provisions share a common purpose:

---

[6] Note 4 *supra* at 1.

[7] Some jurisdictions, like Michigan, require such notice by statute. See, e.g., Ind Stat Ann 35-36-4-1 *et seq.;* Kan Stat Ann 22-3218; Nev Rev Stat 174.087; Okla Stat Ann, tit 22, § 585; SD Cod Laws 23A-9-1 *et seq.;* Utah Code Ann 77-14-2; Wis Stat Ann 971.23(8). Others reach

to prevent the surprise introduction of an alibi defense.[8] As this Court observed in *People v Merritt*, 396 Mich 67, 77; 238 NW2d 31 (1976):

> [T]he statute "was not intended as a disparagement of the defense," *Connery v State*, 499 P2d 462, 465 (Okla Crim App 1972), but "statutes providing for the defense of alibi are intended to erect safeguards against its wrongful use and give the prosecution time and information to investigate the merits of such defense." *State v Martin*, 2 Ariz App 510, 514-515; 410 P2d 132, 136-137 (1966). The procedure is "for the benefit and protection of the public."

When first introduced, such notice of alibi provisions aided only the prosecution and provided no comparable discovery rights to defendants, viz., the prosecution was not required to disclose its intention to rebut an alibi or to name rebuttal witnesses. See, e.g., 1970 CL 768.20. However, in *Wardius v Oregon*, 412 US 470, 472; 93 S Ct 2208; 37 L Ed 2d 82 (1973), the United States Supreme Court ruled that "the Due Process Clause of the Fourteenth Amendment forbids the enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants."

---

the same goal through court rules. See, e.g., FR Crim P 12.1; DC R Crim P 12.1; Fla R Crim P 3.200; Iowa R Crim P 10(11); Minn R Crim P 9.02(1)(c); Ohio R Crim P 12.1. Under some provisions, the defendant is not required to give notice unless the prosecution requests it. See, e.g., FR Crim P 12.1; Colo Rev Stat Ann 16-7-102; La Code Crim P 24, art 727. Other provisions, like Michigan's, place the burden on the defendant to notify the prosecution of the intent to employ the alibi defense. See, e.g., Idaho Code 19-519; Iowa R Crim P 10(11); Ohio R Crim P 12.1.

[8] As one commentator has stated, "[a]libi has been termed a 'hip pocket' defense because of the ease with which it can be manufactured for introduction in the final hours of trial." Epstein, *Advance notice of alibi*, 55 J Crim L & Criminology 29, 31 (1964). Other considerations favoring notice of alibi provisions include the deterrence of perjury and the savings of preparation and trial time. *Id.* at 31-32.

In response to *Wardius,* our notice-of-alibi stat-
ute was amended to require reciprocal discovery.
1974 PA 63. The current statute requires notice to
the prosecution, "not less than 10 days before the
trial of the case, or at such other time as the court
directs," whenever a defendant in a felony case
intends to offer testimony in support of an alibi.
MCL 768.20(1); MSA 28.1043(1). However, the stat-
ute now imposes upon the prosecution a duty to
respond with a notice of rebuttal, "not later than 5
days before the trial of the case, or at such other
time as the court may direct," when it intends to
present witnesses to controvert this alibi defense.
MCL 768.20(2); MSA 28.1043(2). The sanction for
failure to file the required notice is set forth in
MCL 768.21; MSA 28.1044.[9] Before the enactment
of 1974 PA 63, this section provided that where a
defendant failed to comply, "the court may *in its
discretion* exclude evidence offered by such
defendant . . . ." 1970 CL 768.21. (Emphasis
added.) However, the amended section provides
that if either party fails to file notice as required,

[9]   (1) If the defendant fails to file and serve the written notice
prescribed in section 20 . . . , the court shall exclude evidence
offered by the defendant for the purpose of establishing an
alibi . . . . If the notice given by the defendant does not state,
as particularly as is known to the defendant or the defendant's
attorney, the name of a witness to be called in behalf of the
defendant to establish a defense specified in section 20 . . . ,
the court shall exclude the testimony of a witness which is
offered by the defendant for the purpose of establishing that
defense.
   (2) If the prosecuting attorney fails to file and serve a notice
of rebuttal upon the defendant as provided in section 20 . . . ,
the court shall exclude evidence offered by the prosecution in
rebuttal to the defendant's evidence relevant to a defense
specified in section 20 . . . . If the notice given by the prosecut-
ing attorney does not state, as particularly as is known to the
prosecuting attorney, the name of a witness to be called in
rebuttal of the defense of alibi . . . , the court shall exclude the
testimony of a witness which is offered by the prosecuting
attorney for the purpose of rebutting that defense.

"the court *shall* exclude" the testimony sought to be admitted. MCL 768.21; MSA 28.1044. (Emphasis added.)

In light of this language, the sanction of exclusion has been treated as mandatory in some of the appellate decisions.[10] See *People v Alexander,* 82 Mich App 621, 627-628; 267 NW2d 466 (1978), and *People v Wilson,* 90 Mich App 317, 320-321; 282 NW2d 2 (1979). However, other panels of the Court of Appeals have followed a view expressed by Judge ALLEN dissenting in *Wilson, supra.* Pointing to the words that allow filing of a notice of rebuttal "at such other time as the court may direct," MCL 768.20(2); MSA 28.1043(2), Judge ALLEN opined that the trial court continues under the amended version of the statute to retain discretion and, under some circumstances, may permit rebuttal testimony even where notice is not filed until after commencement of the trial. 90 Mich App 322. (ALLEN, J., dissenting.) See also *People v Coulter,* 94 Mich App 531, 535; 288 NW2d 488 (1980); *People v Stinson,* 113 Mich App 719, 724-725; 318 NW2d 513 (1982) (rebuttal of insanity defense).

In *People v Bell,* 169 Mich App 306; 425 NW2d 537 (1988), where the defendant's alibi witnesses were uncoöperative, the prosecution, before hearing their testimony, was unable to discover the existence of a rebuttal witness. While recognizing the mandatory language in the sanction provision, the *Bell* panel ruled that the trial judge had discretion under such circumstances to allow the filing of a rebuttal notice even after commencement of trial: "Any other interpretation of the

---

[10] Although *Merritt, supra,* involved a case under the pre-1974 version of the statute, this Court noted in dictum that "[a] comparison of the old and new language indicates that, among other changes, the preclusion sanction is now mandatory." 396 Mich 74, n 1.

statute would render the phrase 'at such other time as the court directs' meaningless." 169 Mich App 309.

We agree with those panels that have concluded that the language "or at such other time as the court may direct" preserves the trial court's discretion to fix the timeliness of notice in view of the circumstances.[11] Otherwise, the purpose of the notice-of-alibi statute may be defeated, and the trial process relegated to the status of a "poker game in which players enjoy an absolute right always to conceal their cards until played." *Williams v Florida,* 399 US 78, 82; 90 S Ct 1893; 26 L Ed 2d 446 (1970).

Our conclusion that the Legislature intended to leave such discretion in the hands of the trial court is indicated, we believe, by an examination of the balance that was struck in fashioning the current statute. Although the accused must provide information about the place at which he claims to have been when the alleged offense occurred, in other respects the statute requires only notice of the *names* of prospective witnesses— without addresses and without information regarding the nature of the testimony to be given.[12] Instead of furnishing adequate tools needed for effective reciprocal discovery, this procedure provides little more than a "general alert" and must contemplate that such limited disclosure would not eliminate the element of surprise in many cases.

Although the statute leaves the trial court with

[11] The wording of the provision that imposes the sanction also supports this conclusion. That provision mandates exclusion of rebuttal evidence where the prosecutor "fails to file and serve a notice of rebuttal upon the defendant *as provided in section 20 . . . .*" MCL 768.21(2); MSA 28.1044(2). (Emphasis added.) Thus, the sanction provision necessarily takes into account the words in § 20 that grant discretion to the trial court ("or at such other time as the court may direct").

[12] MCL 768.20(1), (2); MSA 28.1043(1), (2).

considerable discretion to allow or disallow the testimony of rebuttal witnesses when a timely notice has not been filed, of course, such a decision may be overturned upon review if the court's discretion is abused.

We turn now to consider the standards that should govern a trial court's exercise of that discretion.

### III

In this case, defendant urges this Court to adopt a "due diligence" standard to control the trial court's exercise of its discretion. Defendant points by analogy to subsection 3 of the notice of alibi statute, which specifically allows addition of a witness "[u]pon motion with notice to the other party and upon a showing by the moving party that the name of an additional witness was not available . . . and could not have been available by the exercise of due diligence . . . ." MCL 768.20(3); MSA 28.1043(3).

In support of this argument, defendant relies on two Court of Appeals' decisions in which the panels applied a "due diligence" standard to the late filing of a rebuttal notice. In *People v Diaz,* 98 Mich App 675; 296 NW2d 337 (1980), the trial court allowed the testimony of a rebuttal witness even though notice was not provided until the ninth day of trial. The Court of Appeals affirmed this decision, noting that two of the alibi witnesses could not be located before trial and the prosecution was unaware of the possible rebuttal witness until the defendant testified. Thus, the Court explained, "the trial court properly admitted the testimony based on a showing that the name was not available when notice was required and could not have been available in the exercise of due

diligence." 98 Mich App 681. Similarly, in *Bell, supra,* where alibi witnesses were uncoöperative and the prosecution, without hearing their testimony, was unable to discover the existence of a rebuttal witness, the panel refused to reverse the trial judge's finding of due diligence. 169 Mich App 309.

While we do not quarrel with the result in the two cases cited, we nevertheless decline to adopt due diligence, alone, as the controlling standard in judging the timeliness of alibi or rebuttal notice. As we stated in *Merritt, supra,* whether the trial court has abused its discretion "varies with the facts of each case, and must inevitably involve a weighing of the competing interests involved." 396 Mich 82; see also *People v Williams,* 386 Mich 565, 573; 194 NW2d 337 (1972).

We are conscious of the fact that the federal courts also have discretion to allow or disallow the testimony of an undisclosed alibi or rebuttal witness.[13] Although we are in no way bound by their example, we do find it instructive. The federal notice-of-alibi provision, FR Crim P 12.1(d) provides an exclusion sanction where a party fails to comply with the rule. As is true with respect to similar provisions in a number of our sister states, the federal rule provides an exception: "[F]or good cause shown, the court may grant an exception to any of the requirements . . . of this rule." FR Crim P 12.1(e).[14]

In *United States v Myers,* 550 F2d 1036, 1043 (CA 5, 1977), the United States Court of Appeals for the Fifth Circuit identified considerations to be weighed in reviewing a trial court's exercise of its discretion under Rule 12.1:

---

[13] *United States v Portillo,* 633 F2d 1313, 1324 (CA 9, 1980).

[14] See, e.g., DC R Crim P 12.1(e); Fla R Crim P 3.200; Iowa R Crim P 10(11)(d); Ind Stat Ann 35-36-4-3.

> In determining how to exercise its discretionary power to exclude the testimony of undisclosed witnesses . . . a district court should consider (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case.

This test has been applied both to the prosecution[15] and to the defense[16] in cases involving failure to file any notice,[17] as well as a failure to list all witnesses.

In *Myers,* the prosecution called four rebuttal witnesses not listed in its response to defendant's notice of alibi. The trial court allowed the unlisted witnesses to testify and later denied the defendant's motions to strike their testimony and documentary evidence. On appeal, the court reversed these decisions, finding that "the prejudice to the defense was substantial and remained unabated," *id.,* because defense counsel was unable to reconsider his strategy in light of the undisclosed rebuttal witnesses. Moreover, the court found that the reason for nondisclosure was "feeble" and that the other evidence against the defendant was "weak." *Id.* Thus, the conviction was reversed.

Mindful of the linguistic differences between our statute and the federal rule, we nevertheless find

---

[15] See, e.g., *United States v Causey,* 834 F2d 1277, 1282, n 2 (CA 6, 1987); *United States v Wood,* 780 F2d 555, 560-561 (CA 6, 1986); *United States v Carter,* 756 F2d 310, 312 (CA 3, 1985); *United States v Creamer,* 721 F2d 342, 344 (CA 11, 1983); *United States v Woodard,* 671 F2d 1097, 1099 (CA 8, 1982); *United States v Portillo,* n 13 *supra* at 1324.

[16] See, e.g., *Clark v United States,* 396 A2d 997, 1000 (DC App, 1979); *United States v White,* 583 F2d 899, 902 (CA 6, 1978).

[17] See, e.g., *United States v Carter,* n 15 *supra.*

that the *Myers* test provides an appropriate stan-
dard by which to judge the exercise of discretion
vested in the trial court by our notice-of-alibi
statute. This test takes into account not only the
diligence of the prosecution, but also the conduct
of the defendant and the degree of harm done to
the defense. It tends to protect the prosecution in
cases where the defendant is at fault[18] or where
the defendant suffers little or no prejudice.[19] At the
same time, it tends to protect the defendant when
the conduct of the prosecution unfairly limits the
defendant's choice of trial strategy, as in *Myers.*

IV

Examining the record in this case in light of the
factors listed in *Myers,* we find that the trial court
abused its discretion in allowing the testimony of
the rebuttal witnesses.

First, the defendant's case was severely preju-
diced by the prosecution's untimely disclosure of
rebuttal witnesses. Because defense counsel was
unaware not only of the names of the rebuttal
witnesses, but of the prosecution's intention to
present such witnesses, he was unable to make an
informed decision whether to proceed with the
alibi defense. Such an informed decision is "cru-
cial," *Williams v Florida,* 399 US 85, and the
existence or identity of rebuttal witnesses is a
critical factor in that decision, whether the defen-
dant's alibi is true or false.[20] As did the court in

---

[18] See, e.g., *Causey* and *Wood,* n 15 *supra.*

[19] See, e.g., *McClendon v United States,* 587 F2d 384 (CA 8, 1978).

[20] The importance of this strategic decision was recognized in two
decisions of the Court of Appeals, although the panels erroneously
described the preclusion sanction as "mandatory." *People v Alexan-
der,* 82 Mich App 627 ("While a defendant arguably should know how
a witness whom he has listed on a notice of alibi will testify, a
defendant should also be entitled to know whether the prosecution

*Myers,* 550 F2d 1043, we find that the notice of alibi statute "entitles a defendant to evaluate the strategy of advancing an alibi defense in light of the named rebuttal witnesses."

Second, the only explanation given for the failure to file a notice of rebuttal was simple confusion in the prosecutor's office. As the trial prosecutor explained, the alibi notice was not in his file before trial commenced because it had been served on one of his colleagues who neglected to place it in the file before the case was reassigned. Unlike *Diaz* and *Bell,* in which the prosecution did not learn of the rebuttal witnesses until after hearing the alibi testimony, the trial prosecutor in this case should have known of the alibi defense before trial.

Third, the severe harm caused by the nondisclosure could not be mitigated by subsequent events. The crux of defendant's challenge is that had he known of the prosecution's intention to rebut his alibi, he might have decided not to present that defense. However, once the alibi defense was announced to the jury, defendant's choices were limited. This prejudice could have been mitigated, and defense counsel would have been able to reëvaluate the alibi defense, had the prosecution notified him of the possibility of rebuttal before his opening statement. However, merely allowing him the opportunity to interview the witnesses before their testimony did not mitigate this prejudice.

Fourth, unlike the court in *Myers,* we recognize

will rely on that witness in rebuttal"), and *People v Wilson, supra* at 321 ("Unless service is made before trial, a defendant cannot rely upon the notice, or lack thereof, in formulating trial strategy, and will be surprised"). See also *Jackson v Fogg,* 465 F Supp 177, 194 (SD NY, 1978) (explaining that "[i]f defense counsel had known that the rebuttal evidence would be offered, he could have dealt with it in his examination . . . or he could have proceeded with two instead of three alibi witnesses").

that in this case there is strong evidence support-
ing the jury's finding of defendant's guilt. Harmon
testified that he pulled his assailant's mask off and
observed his face from a short distance. He was
able to describe his assailant's clothing and physi-
cal appearance and selected defendant from a book
of photographs given to him by police. He stated
that he had seen the defendant around the neigh-
borhood and positively identified him both at the
preliminary examination and at trial.

Nevertheless, although the evidence may be sub-
stantial, it is not overwhelming. There is no indi-
cation that any of the stolen property was recov-
ered from defendant, and no fingerprints were
obtained from Harmon's house. Furthermore,
shortly before the attack on Harmon, a similar
incident occurred at a nearby house. Defendant
participated in a line-up in that case, but was not
identified as the perpetrator by the victims.[21]

The trial court held that exclusion of the rebut-
tal testimony would be "totally unjust." We dis-
agree. Our assessment of the *Myers* factors weighs
in favor of excluding the testimony of the rebuttal
witnesses: the prosecutor's explanation for failure
to comply with the notice requirement was feeble
at best, the prejudice to defendant was serious and
could not be cured by a continuance, and the
evidence against defendant, although substantial,
was not overwhelming. Furthermore, the trial
court's explanation of its decision was inadequate
in view of the prejudice suffered by defendant in
making an informed choice of defense strategy.
Thus, we find that the trial court erred in allowing
the rebuttal testimony.

---

[21] Deladurantaye also testified that there was a break-in at her
house on the same night, and that she chased the intruder. She did
not think that defendant was the intruder. The police apprehended a
man matching the description she had given; that man was not
defendant.

Error in the admission of evidence is not grounds for reversal where the error is harmless. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972). The only direct evidence linking defendant to the charged crimes was the testimony of the victim. Thus, before notice that rebuttal witnesses would be allowed to testify, the case envisioned by defense counsel was essentially a credibility contest between the victim and the alibi witnesses.[22] It cannot be said that the jury would have decided this credibility contest in the same way had it not heard the rebuttal testimony. Because we are unable to conclude that the conviction of defendant was not a miscarriage of justice, the error requires reversal. MCL 769.26; MSA 28.1096.

v

For the reasons stated above, we hold that the trial court erred in allowing the testimony of the two rebuttal witnesses.

Accordingly, we reverse the decisions of the trial court and the Court of Appeals and remand this case for a new trial.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, and MALLETT, JJ., concurred with GRIFFIN, J.

RILEY, J. *(concurring).* I agree with the majority that the prosecutor in the instant case violated MCL 768.20 *et seq.;* MSA 28.1043 *et seq.,* and that the error was not harmless. Nevertheless, because

---

[22] In deciding this credibility contest, the jury would have been required to weigh such evidence as Harmon's identification of defendant, his testimony that he detected no odor of alcohol on his assailant, and his testimony that he thought he cut the defendant above the eye against such evidence as the testimony of defense witnesses that defendant had been drinking that night, was severely hung over that morning, and had no cut above his eye.

I find that the majority fails to apply the appropriate standard delineated in subsection 3 of the statute to determine whether the prosecutor violated the act, I write separately.

I

Subsection 1 of the notice-of-alibi statute mandates in pertinent part:

If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. [MCL 768.20(1); MSA 28.1043(1).]

Likewise, subsection 2 of the statute places a reciprocal duty upon the prosecutor:

Within 10 days after the receipt of the defendant's notice but not later than 5 days before the trial of the case, or at such other time as the court may direct, the prosecuting attorney shall file and serve upon the defendant a notice of rebuttal which shall contain, as particularly as is known to the prosecuting attorney, the names of the witnesses whom the prosecuting attorney proposes to call in rebuttal to controvert the defendant's defense at the trial of the case. [MCL 768.20(2); MSA 28.1043(2).]

Additionally, subsection 3 of the act details the exceptions to subsections 1 and 2:

Both the defendant and the prosecuting attorney shall be under a continuing duty to disclose

promptly the names of additional witnesses which come to the attention of either party subsequent to filing their respective notices as provided in this section. Upon motion with notice to the other party and upon a showing by the moving party that the name of an additional witness was not available when the notice required by subsections (1) or (2) was filed and could not have been available by the exercise of due diligence, the additional witness may be called by the moving party to testify as a witness for the purpose of establishing or rebutting an alibi defense. [MCL 768.20(3); MSA 28.1043(3).]

This Court has long held that the purpose of statutory construction is to find and enforce the intent of the Legislature. *Leoni Twp v Taylor,* 20 Mich 148, 154-155 (1870). Because the Legislature is presumed to carefully craft the law to convey its intentions, the plain meaning of an unambiguous and clear statute must be enforced. *Storey v Meijer, Inc,* 431 Mich 368, 376; 429 NW2d 169 (1988). Of course, the meaning of a provision may be clarified by an examination of the whole statute. *Collins v Secretary of State,* 384 Mich 656, 666; 187 NW2d 423 (1971). Furthermore, if the application of legislation is ambiguous in a particular case, then reference to the "object of the statute, the harm which it is designed to remedy" is appropriate to effectuate the Legislature's intent. *In re Forfeiture of $5,264,* 432 Mich 242, 248; 439 NW2d 246 (1989).

II

Although the majority correctly finds that the prosecutor violated MCL 768.20 *et seq.;* MSA 28.1043 *et seq.,* the opinion unfortunately misconstrues the internal workings of the statute. The plain language of the statute, viewed in its en-

tirety, delineates two pathways to grant sufficient notice of alibi witnesses. Subsections 1 and 2 delineate the usual pathway which requires notice before trial. Subsection 2, for example, unambiguously indicates that the normal procedure to be followed by the state is to notify a defendant of rebuttal alibi witnesses no later than five days before trial unless the trial court alters that date before trial. Although subsections 1 and 2 permit the trial court to alter the timing of notice, the statutory framework envisions that the date be set before trial.

While subsections 1 and 2 appear to focus on garden variety, pretrial notice of alibi witness (i.e., when parties know who the alibi witnesses are and can locate them), subsection 3 delineates the unusual pathway to be followed when a witness is newly discovered after the parameters for normal notice have passed (e.g., when a prosecution alibi witness is not located until the day of trial). In other words, subsection 3 outlines the exceptions to subsections 1 and 2. Subsection 3 permits late notice and endorsement of an alibi witness when the moving party can show that (1) the name of the witness was unavailable at the time notice normally would be required by subsections 1 and 2, and (2) the name "could not have been available by the exercise of due diligence . . . ." MCL 768.20(3); MSA 28.1043(3).[1]

As noted by the majority, the purpose of the

---

[1] In fact, the majority notes at least two situations for which subsection 3 was intended: *People v Bell,* 169 Mich App 306; 425 NW2d 537 (1988) (because alibi witnesses were uncoöperative, the prosecutor was unable to discover the existence of rebuttal witnesses, hence the finding of due diligence was affirmed), and *People v Diaz,* 98 Mich App 675, 681; 296 NW2d 337 (1980) (a rebuttal witness was permitted to testify although notice was not given until the ninth day of trial because the identity of the witness was "not available when notice was required and could not have been available in the exercise of due diligence").

notice-of-alibi statute is "to prevent the surprise introduction of an alibi defense." *Ante* at 676. The prevention of surprise alibi defense witnesses serves the " 'ends of justice' " by granting both parties " 'the maximum possible amount of information with which to prepare their cases," *People v Merritt,* 396 Mich 67, 77; 238 NW2d 31 (1976), quoting *Wardius v Oregon,* 412 US 470, 473; 93 S Ct 2208; 37 L Ed 2d 82 (1973), and prevents the abuse of the defense by the easy manufacture of " 'an eleventh-hour defense.' " *Id.,* quoting *Williams v Flordia,* 399 US 78, 81; 90 S Ct 1893; 26 L Ed 2d 446 (1970).[2] Concomitantly, the statute is also designed to prohibit the introduction of surprise prosecution rebuttal witnesses. Hence, to ensure that notice procedures are strictly adhered to by both defendants and prosecutors, the statute imposes a severe sanction that excludes the testimony sought to be admitted when a party fails to comply with its procedures,[3] and specifies subsection 3 as its only exception.

Yet the majority permits prosecutors and defendants to evade the strict requirements of subsection 3 by interpreting the phrase "or at such other time as the court may direct" of subsection 2 to include time during trial. That phrase, however, appears to be intended to grant the trial court sufficient flexibility to cope with the rigors of a trial docket before trial, not to bypass subsection 3. If the Legislature intended to endow upon the trial court the ability to admit alibi witnesses even though notice was given after the beginning of trial without meeting the requirements of subsection 3, it could have written much clearer and

---

[2] See also Epstein, *Advance notice of alibi,* 55 J Crim L & Criminology 29, 31 (1964).

[3] MCL 768.21; MSA 28.1044.

forthright language than the phrase relied upon by the majority.

Furthermore, the majority's interpretation of subsection 2 eviscerates the strict requirements of subsection 3. As noted, the statutory framework permits surprise alibi witnesses during trial only if their introduction meets the due diligence strictures of subsection 3.[4] To hold otherwise renders subsection 3 all but meaningless. After all, the Legislature should not be understood to have created the strict requirements of subsection 3 when the lesser standard of subsections 1 and 2 could admit the same witnesses. Even the prosecutor recognizes that "MCL 768.20(1) and (2); MSA 28.1043(1) and (2) have their own specific time frames," as opposed to subsection 3. Contrary to the assertions of the majority, maintaining the due diligence standard does not defeat the purpose of the notice-of-alibi statute, but preserves it. Finally, granting defendants and prosecutors the ability to introduce alibi witnesses during trial under the more lenient abuse of discretion standard is more akin to a " 'poker game in which players enjoy an absolute right always to conceal their cards until played,' " *ante* at 679, quoting *Williams, supra* at 82, than ensuring that defendants and prosecutors comply with subsection 3.[5]

III

In the instant case, the prosecutor clearly failed to comply with subsection 2—no notice was given

---

[4] Defendant counters that the due diligence standard should apply to subsection 2. Yet, no such standard is mandated in either subsection 1 or subsection 2.

[5] Furthermore, the majority's utilization of federal authority is not persuasive because federal law explicitly defines "good cause" as its standard for exceptions to its notice requirements. FR Crim P 12.1(e). Michigan, on the other hand, has not adopted the "good cause" standard but instead enacted subsection 3.

until the middle of trial. Nor did the prosecutor
meet the requirements of subsection 3. First, the
names of the witnesses were readily available
before trial from police reports and the detective
in the case. Second, the witnesses would have been
discovered with the exercise of due diligence. Al-
though undefined by the statute, due diligence has
been defined by Michigan courts as "doing every-
thing reasonable, not everything possible." *People
v Bell*, 169 Mich App 306, 309; 425 NW2d 537
(1988).[6] As noted by the majority, in the instant
case the obtaining and giving notice of the wit-
nesses in question was certainly within the realm
of reasonable behavior and should not be excused
to the detriment of defendant.

---

[6] See also *People v LeFlore (After Remand)*, 122 Mich App 314, 319;
333 NW2d 47 (1983).