*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEWAYNE CLAY,

        Defendant-Appellant.

UNPUBLISHED
September 17, 2019

No. 337666
Wayne Circuit Court
LC No. 16-008073-02-FH

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendant and Nadeem Yousaf Rajput were charged as codefendants for two related shooting incidents. Defendant was charged with Assault with Intent to Commit Murder (AWIM) of Rajput, felon-in-possession, and felony-firearm for the first incident. Rajput was charged with first-degree murder, MCL 750.316, of Lakisha Henry (defendant's girlfriend), and felony-firearm for the second incident.[1]

Defendant was convicted of assault with intent to murder (AWIM), MCL 750.83, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm) (second-offense), MCL 750.227b. Defendant was sentenced to 18 to 30 years' imprisonment for his AWIM conviction, one to five years' imprisonment for his felon-in-possession conviction, and five years' imprisonment for his felony-firearm, second offense, conviction. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences.

## I. BACKGROUND

---

[1] Although not germane to this appeal, on March 27, 2017, Rajput was convicted of second-degree murder, MCL 750.317 and sentenced to 46 to 95 years' imprisonment.

At 11:00 a.m. on May 7, 2016, defendant and Lakisha were at the home of her mother, Kim Henry, because defendant stayed the night. Defendant and Lakisha were still there when Kim left for work at 12:30 p.m.

At 4:21 p.m., a nonfatal shooting occurred. Basel Al-Besi, the owner of a business at 15752 West Warren, heard about 14 gunshots. Al-Besi went outside and saw a red Malibu[2] and white Infinity. Al-Besi saw the red Malibu turn right on West Warren and believed that two people were in the car—a woman driving and someone in the backseat. A 13-year-old girl who lives on West Warren, saw someone in a burgundy car shooting at a brown car occupied by a person named "Nate."

At 4:23 p.m., a fatal shooting occurred. Lynn Hausch, who lived on Mansfield, was outside when she heard tires screeching; Hausch saw a red car and a white car with people arguing and yelling out of the windows at each other. Hausch saw a hand holding a gun come out of the white car and shoot at the red car. Lakisha did a U-turn, drove north on Mansfield, and hit a tree. Hausch did not see any other people in the car. Lakisha died a short time later at the hospital.

About 20 seconds after the shooting, a phone number associated with defendant made a phone call to a number associated with Lakisha, which lasted for one minute and 36 seconds. At 4:26 p.m., the phone number associated with defendant made another phone call to Lakisha that lasted for 35 seconds. At 4:29 p.m., the phone number associated with defendant made two phone calls to Lakisha that lasted for 11 seconds and 22 seconds, respectively. At 4:30 p.m., the phone number associated with defendant made a phone call to Lakisha that lasted for 36 seconds.

Detroit Police Officers Spencer Swadish and Mario Hernandez, with the sixth precinct, were in the area of Mansfield and West Warren when they heard the gunshots. A man drove up behind them and stated that he saw a white car chasing a red Malibu; the white car was shooting at the red Malibu on St. Marys. Officer Hernandez turned the car around and began driving on St. Marys. Dispatch sent them to 6497 Mansfield for a "shots in progress run." Upon arrival, Officers Swadish and Hernandez saw a red Malibu that had crashed into a tree with Lakisha in the driver's seat. Officers Swadish and Hernandez saw Lakisha struggling to breathe and blood splatter in the car.

EMS subsequently arrived and took Lakisha to the hospital. At 4:46 p.m., defendant called Lakisha's 15-year-old daughter, Leslie Gordon, and told her that Lakisha was in a bad car accident. Leslie called her uncle, David Henry, and asked him if Lakisha was in a car accident; he responded that he did not know. David stated that the last time he had seen Lakisha was with defendant about 30 to 40 minutes before. Defendant called Leslie multiple times, but Leslie did not answer. At 4:56 p.m., Leslie called defendant back to find out what hospital Lakisha was at.

At 5:03 p.m., defendant called David and told David that he thought that Lakisha was in a car accident. Defendant told David to come over to his house. David went to defendant's house; defendant told David that he and Lakisha "got into a shoot-out" around the corner. Defendant

---

[2] Testimony revealed that Lakisha drove a burgundy Malibu.

stated that he went back home because he ran out of bullets. Lakisha stayed in the car waiting for defendant, but she drove off from defendant's house. Defendant stated that he was on the phone with Lakisha, and she ran into a tree. Defendant stated, "Your mother is going to kill me." Defendant stated that he left his gun in the car with his fingerprints on it. David went to the area of the accident and saw that it was blocked off. David left and went to Oakwood Hospital. Kim and Leslie and arrived at Oakwood Hospital where the doctors told them that Lakisha died from a gunshot wound.

The 13 year-old girl, who told police she witnessed shooting on West Warren, picked defendant out of a photographic lineup as the person in the burgundy car. However, she indicated that a man in the backseat—not defendant—did the shooting.

Defendant testified that on May 7, 2016, he was at Lakisha's house at 9558 Patton. Defendant and Lakisha drove her burgundy Malibu to get the lawnmower repaired after Kim left for work. They were at the repair shop for about 40 minutes. They then went to the house of defendant's mother. Lakisha told defendant that she was going home and to call her after he came back from Cortez Malone's funeral. Defendant got ready for the funeral and his cousin, Fateama Carr-Jacobs, picked up defendant and his mother. They all went to the house of defendant's grandfather because people were meeting there before the funeral. The funeral began at 3:00 p.m. After the funeral, defendant and Carr-Jacobs took defendant's mother home. Defendant and Carr-Jacobs then went to Starters for his cousin, Kevin's, graduation.

At 4:10 p.m. or 4:15 p.m., defendant and Carr-Jacobs arrived at Starters. Carr-Jacobs received a phone call from defendant's brother, Pierre Carr. Carr-Jacobs told defendant that Pierre said that Lakisha was in a car accident. Defendant used someone's phone (he does not remember whose) to call Lakisha and Leslie. However, Pierre was the person "blowing up" Lakisha's phone after the shots were fired and calling Leslie. However, defendant did tell Leslie that Lakisha was in a car accident. Leslie asked for the location of the accident, but defendant did not know. Pierre called Carr-Jacobs back and told her the location of the accident. Around 5:00 p.m., Pierre arrived at Starters.[3] David told defendant that Lakisha died from a gunshot wound to the chest.

The jury found defendant guilty of AWIM for firing a weapon at Rajput, felon-in-possession, and felony-firearm. Following his conviction, defendant brought motions in the trial court seeking a new trial. Of particular importance to this appeal, defendant filed a motion for a new trial and *Ginther*[4] hearing in the trial court alleging defense counsel was ineffective for failing to (1) file a notice of alibi under MCL 768.20, (2) meet with and prepare the alibi witnesses despite defendant's repeated requests to do so, (3) pursue the alibi defense in a timely manner once he was aware of the alibi witnesses, (4) timely file a witness list, (5) object to entry

---

[3] On September 14, 2016, police arrested defendant and seized his cellular phone. Police testified that it was unlikely that cell phone calls made to Lakisha's cell phone from defendant's cell phone at the time of her death originated from Starters Bar and Grill.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

of exhibits that reflected a murder that he was not on trial for, and (6) object to the entry of misrepresented evidence that alleged that he was the shooter when evidence indicated that he was not the shooter.

On June 12, 2018, the trial court issued an opinion and order denying defendant's motion for a new trial. Regarding defendant's argument that defense counsel was ineffective for failing to file a timely notice of alibi defense, the trial court rejected defendant's arguments because defendant failed to (1) show defense counsel's performance fell below an objective standard of reasonableness since defendant did not provide the alibi information to defense counsel or (2) demonstrate prejudice since the witnesses would not have provided any additional exculpatory evidence. Regarding defendant's argument that defense counsel was ineffective for failing to make a motion for a judgment of acquittal, the trial court rejected it because defendant failed to demonstrate prejudice since a rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. Regarding defendant's argument that defense counsel was ineffective for failing to object to prejudicial evidence during trial, the trial court rejected defendant's argument because defendant failed to demonstrate prejudice. Regarding defendant's argument that defense counsel was ineffective for failing to object to the prosecutor presenting witnesses, the trial court rejected defendant's arguments because defendant failed to show defense counsel's performance fell below an objective standard of reasonableness since the prosecutor's witness list was timely filed. The trial court rejected defendant's request for a *Ginther* hearing, in part, because the trial court found that defendant had failed to provide a list of alibi witnesses to his counsel within the proper timeframe for defense counsel to have asserted an alibi defense. Accordingly, the trial court denied defendant's motion for a new trial. This appeal then ensued.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant first asserts that the trial court erred by not finding trial counsel ineffective for failing to: (1) file a notice of alibi defense, (2) timely file a witness list, and (3) object to the admission of prejudicial autopsy photographs of Lakisha.

This Court reviews both a trial court's denial of a motion for a new trial and its denial of a motion for a *Ginther* hearing for an abuse of discretion. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008); *People v Unger (On Remand)*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions. *Miller*, 482 Mich at 544.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "[A] trial court's findings of fact are reviewed for clear error." *Id*. "Questions of constitutional law are reviewed by this Court de novo." *Id*.

"To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). A defense

-4-

counsel's performance is deficient if "it fell below an objective standard of reasonableness under prevailing professional norms." *Id*. To show prejudice, "the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

First, defendant argues that the trial court erred in denying his motion for a new trial when defense counsel was ineffective because he failed to file an alibi notice. Alibi testimony is "testimony offered for the sole purpose of placing the defendant elsewhere than at the scene of the crime." *People v Watkins*, 54 Mich App 576, 580; 221 NW2d 437 (1974). To present alibi testimony, a defendant must serve notice on the prosecution under MCL 768.20(1). The failure to file and serve notice requires exclusion of the evidence establishing the alibi apart from the defendant's own testimony, MCL 768.21; *People v Merritt*, 396 Mich 67, 89; 238 NW2d 31 (1976), unless the trial court rules otherwise, *People v Travis*, 443 Mich 668, 679-680; 505 NW2d 563 (1993). When an ineffective assistance of counsel claim is premised on defense counsel's failure to file an alibi notice and consequent failure to present an alibi witness, the defendant must demonstrate that the witness would have given favorable alibi testimony. *People v Pickens*, 446 Mich 298, 327; 521 NW2d 797 (1994).

At the January 13, 2017 the pretrial hearing, defense counsel stated:

> Your Honor, I was just going to ask for an adjournment. I found out about these witnesses for an Alibi notice[] they gave me the actual witnesses today.
>
> You're supposed to turn them in ten (10) days prior to trial. I received the list written out today for the address of one, two, three, four -- six witnesses that would be potential Alibi Notice.
>
> And in order to do that, we have to ask for an adjournment, because trial is Tuesday, and ten days prior for the Michigan MCL...

The trial judge responded:

> Well, I know that when were [sic] here -- We've been here a lot of times. But I remember being here in November I believe at the first Final Conference, and you mentioning at Side Bar that you intended to file an Alibi on your client's behalf.
>
> So, the fact that there was an alibi issue has been here. But I'm not adjourning the trial for that. I mean, no. I'm not going to adjourn the trial for that.
>
> Are you willing to waive the required ten-day notice for alibi witnesses?

The prosecutor responded, "Judge, no; I'm not. And I'll tell the Court why. First of all, I didn't know there was–I don't have the names or addresses yet." The trial court stated, "So it still hasn't been filed." The prosecutor stated, "Right. So, there being six witnesses, I want my Officer in Charge to talk to them. The other thing that the statute requires is that the address

where the defendant is claiming to be, that's supposed to be provided in the Notice as well." The trial judge then stated:

> Not just the addresses of the people he was supposedly with, but the address of where he was supposed to be.

> Now, see here's the thing. And I know from this previous conversation -- I cut you off, [prosecutor], but all I needed to know is whether or not you were willing to waive.

> What you said previously at Side Bar is that it was your understanding -- and we may have been on the record.

> Sometimes we're at Side Bar and it's on the record, just not on the microphone -- that your client was not available, would have an alibi, and his alibi was, he was at a funeral with his family members. That's my understanding.

> That's real easy. You know, and if his family was saying that back in November or October, I don't know when, I don't understand why it would have taken until January for them to provide you with that information.

> Because where a funeral is, I mean, there's only so many places -- well, maybe the funeral was in Alabama; I don't know. But there's only so many places around here where funerals could have been. And it shouldn't have been that hard to come up with the other grieving relatives that were at this same funeral.

> So, you have failed to comply with the requirements for filing an appropriate Alibi Notice. Those witnesses will not be allowed to testify, and that's Mr. Clay's own fault for failing to get you the information in a timely fashion.

> I do know that you've been trying for months to iron this out, because you told me. But if they don't give you the information, Mr. Nyenhuis, there's only so much you can do.

The trial court further stated, "So, those people won't be testifying, and I will not be adjourning this trial. Because your client's failure to assist you does not necessitate me adjourning the trial that you all have known about for quite some time. So your motion has been made, and it's denied." In response, defense counsel stated:

> I just wanted to say that the person who was helping me get the Alibi Notice -- because you remember you raised [defendant]'s bond to something that I think was too high.

> But she had a very sick son, and I have medical records. And she was supposed to be getting me the alibi information. And unfortunately she even had to take her son to the hospital again yesterday.

-6-

The trial judge stated:

> And I'm sorry about that. That's very tragic, you know, that her son was very sick and was hospitalized over the holidays.
>
> But the fact remains, if your client was in fact at a funeral -- a family member's funeral -- it wouldn't seem to me that there would be only one --
>
> I mean, even if you had filed a Partial Alibi Notice with the location and the date of the funeral, that could have been something that the prosecutor could have looked into and had their investigators work on. Even that information.
>
> I mean, how hard is it to come up with your own family member's names? Your client should know what family members he was at the funeral with. None of that is compelling to me at all.

Attached to defendant's brief in this case were affidavits in support of his alibi defense. There was an affidavit signed by Monique Jefferson on April 13, 2017, stating that she retained defense counsel on or about September 16, 2016, and told defense counsel at the initial meeting that defendant had an alibi and a list of alibi witnesses. A week later, Jefferson states that she provided defense counsel the list of alibi witnesses, photographs, and an obituary from a funeral that defendant attended. Jefferson also provided defense counsel the following names of alibi witnesses: Carr-Jacobs, Karis Carr, and Linda Williams-Boyce. However, according to Jefferson's affidavit, defense counsel did not request any alibi information until January 13, 2017, and Jefferson told defense counsel that she previously provided the information. Jefferson stated that she, once again, provided information—photographs, Facebook posts, and the obituary.

Karis Carr signed an affidavit on April 13, 2017, stating that at about 3:00 p.m. on May 7, 2016, she saw defendant at Malone's funeral when she arrived. Karis spoke with defendant at the end of the funeral, and defendant said he was going to change his clothes at his grandfather's home and go to the wake at Starters. After the funeral, defendant, Karis, and others went to 14260 Marlowe to wait for the wake to begin. At about 5:30 p.m., Karis left to go to Starters located at 18426 Plymouth Road. Karis saw defendant at each event at various times, and he took photographs. Karis did not see defendant separate from the family or events.

Carr-Jacobs signed an affidavit on April 13, 2017, stating that on May 7, 2016, she was at Malone's funeral. At around 2:00 p.m., Carr-Jacobs arrived at the funeral and spoke with defendant. The funeral ended at about 4:00 p.m. After the funeral, defendant, Carr-Jacobs, and others went to 14260 Marlowe. Everyone stayed there until they went to Starters. At all times, defendant was with either Carr-Jacobs or other family and friends. Carr-Jacobs did not see defendant separate from the family or the events.

Clearly, all of the affidavits were signed well after the January 2017 trial date. The trial court made a finding, based on the representations of trial counsel, that defendant had failed to make his trial counsel aware of his alibi witnesses prior to the January 13, 2017 date. Although Jefferson seems to contradict that assertion—as did defendant in his *Ginther* motion—the trial court made a finding that trial counsel's assertions that he had just been provided the information

were accurate. We find nothing in the record that would lead us to disturb that conclusion. Clearly, from the record we can glean that defense counsel was aware of the requirements of filing an alibi notice. An alibi notice requires the names of the witnesses and "specific information as to the place at which the accused claims to have been at the time of the alleged offense," MCL 768.20(1), which the defense counsel did not receive until four days before the trial. It would not have been possible for trial counsel to have provided this information because his client failed to provide him with the information in a timely manner. Accordingly, the trial court did not err by holding that it was defendant's failure—rather than that of trial counsel—to file an alibi defense.

Our Supreme Court has instructed us that "[b]ecause the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Even if we were to conclude that defendant had demonstrated that trial counsel's alleged inactions fell below a standard of reasonableness, defendant has failed to assert facts from which the trial court could conclude that but for trial counsel's failure to file an alibi defense, defendant suffered prejudice. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S. Ct. 2052; 80 L Ed 2d 674 (1984). See also, *Pickens*, 446 Mich at 302-303; *Carbin*, 463 Mich at 600. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, 466 US at 694*. Defense counsel's performance will be deemed to have prejudiced defendant if it is reasonably probable that, but for defense counsel's error, "the result of the proceeding would have been different." *Carbin*, 463 Mich at 600.

Here, defendant testified that he was at a different location at the time his girlfriend was fatally shot. Defendant told the jury that he was at the funeral of a relative and then left to go to a local bar which is where he first heard that something had happened to Lakisha. The jury was free to believe or disbelieve his testimony which was directly contradicted by police testimony as to defendant's likely location at the time of Lakisha's death based on the positioning of cell phone towers and calls made from defendant's cell phone to Lakisha's cell phone. Additionally, we note that "the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted). Because defendant was able to assert his alibi defense, that he was at a funeral and Starters at the time of the shooting, the failure of the alibi witnesses to testify did not deprive him of a substantial defense. *Id*.

The record also reveals that the thirteen year-old girl who witnessed the initial shooting testified that defendant was in the front passenger seat of the Malibu during the initial shooting. Testimony from David Henry revealed that he went to defendant's house where defendant told David that defendant and Lakisha "got into a shoot-out" around the corner. Defendant stated to David that he went back home because he ran out of bullets and Lakisha stayed in the car waiting for defendant, but she drove off from defendant's house. Defendant told David, "Your mother is going to kill me." Given the totality of the evidence, defendant has failed to demonstrate that the

trial court erred when he held that defendant could not show the requisite prejudice. Accordingly, defendant is not entitled to relief on this issue.

Defendant also argues that defense counsel was ineffective for failing to file a witness list. As discussed above, defense counsel did not become aware of the possible alibi witnesses until four days before trial. Defendant does not name any additional witnesses, other than his alibi witnesses, who should have been called to testify. Hence, this claim of ineffective assistance of counsel fails for the same reasons set forth above.

Next, defendant argues that he was denied the effective assistance of counsel when trial counsel failed to object to the admission of prejudicial autopsy photographs of Lakisha. However, despite attempts by this Court to receive the exhibits, defendant has not provided them to this Court has required by MCR7.210(C). As a consequence, defendant has waived the issue of whether defense counsel was ineffective for failing to object to the admission of the autopsy photographs at trial by not providing the photographs on appeal. *People v Wilson*, 196 Mich App 604, 615; 493 NW2d 471 (1992). Additionally we note that defendant has not proffered any evidence or argument as to how the photographs were prejudicial other than to assert that they were the photographs of a victim in another homicide and hence, "failure to object to homicide photographs of a victim in another case was prejudicial." Accordingly, defendant is not entitled to relief on this issue.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto