# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DWAYNE LAVON CLARK,

        Defendant-Appellant.

UNPUBLISHED
January 20, 2015

Nos. 316546; 316547
Wayne Circuit Court
LC Nos. 12-011663-FC;
          12-010255-FC

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

In this consolidated appeal,[1] defendant appeals by right his convictions following a jury trial. In Docket No. 316546, defendant appeals by right his convictions of armed robbery, MCL 750.529, carjacking, MCL 750.529a, and carrying a concealed weapon (CCW), MCL 750.227. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 35 to 60 years' imprisonment for the armed robbery conviction, 35 to 60 years' imprisonment for the carjacking conviction, and 5 to 10 years' imprisonment for the CCW conviction. We affirm.

In Docket No. 316547, defendant appeals by right his convictions of carjacking, MCL 750.529a, three counts of armed robbery, MCL 750.529, felon-in-possession of a firearm, MCL 750.224f, CCW, MCL 750.227, and possession of a firearm during the commission of felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 35 to 60 years' imprisonment for the carjacking conviction, 35 to 60 years' imprisonment for each armed robbery conviction, 5 to 10 years' imprisonment for the felon-in-possession of a firearm conviction, 5 to 10 years' imprisonment for the CCW conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

---

[1] See *People v Dwayne Lavon Clark*, unpublished order of the Court of Appeals, issued June 12, 2013 (Docket Nos. 316546; 316547).

I.  PERTINENT FACTS AND PROCEDURAL HISTORY

These cases arise from two carjacking incidents occurring in Detroit, Michigan on September 30, 2012.  Defendant was tried for offenses relating to both incidents in a single trial before a single jury.

A.  DOCKET NO. 316547

On September 30, 2012, at approximately 2:45 a.m., Megan Farris, Nicole McDougal, and Lakesha Payton were in Farris's automobile near in Detroit.  Farris testified that she recalled that McDougal was driving, Farris was in the front passenger's seat, and Payton was in the back seat.  They pulled into a driveway of a house where they were dropping off McDougal.  McDougal got out of the car and walked toward the passenger's side, while Farris got out of the car and walked toward the driver's side.  Payton was getting out of the back seat and getting into the front passenger's seat.  Farris had shut the driver's door when a man, whom she later identified as co-defendant Tracy Wells, came to the door, opened it, pointed a gun toward Farris's head, and told her to get out of the car and leave her things.  There was also a man on the other side of the vehicle, but Farris did not see him.  Farris heard McDougal say that the other man also had a gun, but Farris did not see it.  Farris got out of the vehicle, dropped her phone on the ground, and left her purse in the vehicle.  Farris saw the man on the other side of the vehicle patting down Payton.  Wells then got into the vehicle and started backing up, almost striking Payton; the other man pulled Payton out of the way of the vehicle.  The vehicle drove off.  Farris later identified Wells in a live lineup.

McDougal testified that she recalled Farris being in the back seat and Payton being in the front passenger's seat when they pulled into the driveway.  McDougal got out of the car and began to walk behind the vehicle.  She heard someone say "drop everything you got and get out the car."  She turned around, at which point someone else approached her and said, "turn around and drop everything."  The person had a black gun pointed at her.  McDougal dropped her cell phone, keys, and wallet.  The man picked up her cell phone and wallet, but not the keys.  McDougal saw the vehicle backing up quickly and heard the man that was near her say, "don't hit her."  McDougal then yelled, "please don't hit her with the truck," referring to Payton.  The man pulled Payton out of the way and then jumped into the vehicle.  McDougal did not see either man's face.

Payton testified that she recalled being in the back seat of the vehicle and that Farris was in the front seat.  She testified that Wells opened Farris's door and pointed a gun at her, and that she saw another man behind McDougal.  As Payton was walking toward the back of the vehicle, the man on her side of the vehicle told her to stop and patted her down.  Payton identified that man as defendant.  Payton saw that defendant had a black gun, which she believed was an automatic, when Wells was backing up the vehicle and defendant pulled her back.  Payton testified that she saw defendant's face when he got into the vehicle.  Payton later identified defendant in a photographic lineup.  Payton admitted that at a live lineup she stated that Wells was the person who was behind McDougal and who patted down Payton.  Payton testified that she told a detective that she wanted to correct that statement.  Officer Mark Burke, assigned to the Commercial Auto Theft Section (CATS) of the Detroit Police Department, also testified that

-2-

Payton identified Wells at a live lineup, but testified that she never indicated she wanted to change her statement.

## B. DOCKET NO. 316546

On September 30, 2012, at approximately 11:50 p.m., Christina Ringo and Mohamed Qatanani drove to a party store in Detroit. They were in a gray Malibu that Ringo was renting because she had been in an automobile accident. Qatanani was driving and parked directly in front of the store. He then got out of the vehicle and went into the store. Another gray Malibu pulled up and parked on the left side of Ringo's vehicle. Ringo's car was facing the store, while the other Malibu was facing the street. Ringo testified that there were "a bunch of guys" in the other Malibu.[2] The driver of the other Malibu got out of the vehicle, took a few puffs of a cigarette, and threw the cigarette down. Ringo testified that the man in the passenger's seat, whom Ringo identified as defendant, then moved over to the driver's seat of that vehicle. The driver looked as if he was going into the store, but then entered the driver's side of Ringo's vehicle. He turned to Ringo, put a black gun to Ringo's stomach, and said, "get the f*** out the car, and give me your purse." Ringo grabbed her purse and tried to get out of the car, but the man grabbed her and put the gun to her face. He said, "I'm gonna tell you one more time, get the f*** out of the car, and leave your mother f***in' purse." The man snatched Ringo's purse and pushed her out of the car. The man then drove away and the other Malibu followed. At a live lineup, Ringo later identified the man who took her purse and got into her vehicle as Wells. Ringo identified defendant in a photographic lineup as the person who drove off in the other Malibu.

Qatanani returned to the party store the day after the incident and one of the owners, Rob, showed him a security camera video on his computer. According to Qatanani, the video showed a gray Malibu parked next to Ringo's car and also showed the driver get out and enter Ringo's car. The video showed the man in the passenger's seat move over into the driver's seat. Qatanani obtained a copy of the video on flash drive, but was unable to get the video to play. Qatanani went back to the store and the owner played the video again. Qatanani was unable to locate the flash drive at the time of trial. Officer Lewis Jackson, Jr., also assigned to CATS, testified that he visited the party store two weeks after the incident and he was told by a manager of the store that the video was no longer available because it was taped over after a certain number of days.

Robert Sokana, one of the operators of the party store, testified that he viewed the security video the day of the incident and gave Qatanani a copy of the video the next day. Sokana testified that the video showed "more than two," possibly "three or four" men who had arrived in the other Malibu go in and out of the store a few times before the carjacking. At one point, they drove across the street, then returned and did a U-turn in the parking lot before parking next to Ringo's vehicle. According to Sokana, the vehicle that the men arrived in left first and Ringo's vehicle followed.

---

[2] The record does not reflect whether the other occupants of the car, apart from defendant and Wells, were ever identified.

C. FACTS IN COMMON TO BOTH DOCKETS

Keyona Harris testified that defendant was the father of her child. The police came to her house at 14828 Northlawn on October 5, 2012 with a search warrant. Defendant did not live there, but she told police that defendant had been staying with her. Harris did not own a gun, but a gun was found in her home that day. Harris testified that defendant would come to her house with a man named either Rah-Rah or Ron Ron, and Wells.

Sergeant Robert Wellman of CATS executed the search warrant at that address. Wellman believed the home to be defendant's residence. The officers discovered a black .357 revolver in the closet of the home. The gun was not submitted for fingerprint analysis. Defendant did not testify at trial. The parties stipulated that defendant had been previously convicted of a felony and was ineligible to own a firearm.

The jury convicted defendant as described above.[3] These appeals followed. Defendant raises issues of joinder, denial of an alibi defense, jury selection, and right to a public trial relative to both docket numbers; he additionally challenges the sufficiency of the evidence supporting his convictions in Docket No. 316546. We affirm in both cases.

II. JOINDER

Defendant first contends that he was denied the right to due process by the improper consolidation of the two cases into a single trial. We disagree.

> Generally, this Court reviews questions of law de novo and factual findings for clear error. The interpretation of a court rule, like matters of statutory interpretation, is a question of law that we review de novo. To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute "related" offenses for which joinder is appropriate. Because this case presents a mixed question of fact and law, it is subject to both a clear error and a de novo standard of review. [*People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009) (citations omitted).]

Further, "a preserved, nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. at 243. The burden is on the defendant to show that the error was not harmless. See *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).

"MCR 6.120(A) and (B) establish when a court may join offenses charged in two or more informations against a single defendant . . . ." *Williams*, 483 Mich at 228. MCR 6.120(A) and (B) provide, in relevant part:

---

[3] Wells pleaded guilty to two counts of carjacking, one count of armed robbery, and two counts of felony firearm related to the incidents that occurred on September 30, 2012.

**(A) Charging Joinder.** The prosecuting attorney may file an information or indictment that charges a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial.

**(B) Postcharging Permissible Joinder or Severance.** On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant . . . when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

      (a) the same conduct or transaction, or

      (b) a series of connected acts, or

      (c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

(3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

Thus, "[t]he plain language of MCR 6.120 permits joinder if offenses are 'related.' Offenses are 'related' if they comprise either 'the same conduct' or 'a series of connected acts or acts constituting part of a single scheme or plan.'" *Williams*, 483 Mich at 233 (citation omitted).[4] In *Williams*, the Michigan Supreme Court held that the charges were related based on the following facts:

In both cases, defendant was engaged in a scheme to break down cocaine and package it for distribution. Evidence of acts constituting part of defendant's single scheme was found in both the motel room and the house at 510 Nevada. Even if one views defendant's first arrest in November and his second arrest in February as discrete moments in time, direct evidence indicated that he was engaging in the same particular conduct on those dates. The charges stemming from both arrests were not "related" simply because they were "of the same or

---

[4] Although the Court in *Williams*, 483 Mich at 233 n 5, interpreted the prior version of MCR 6.120(B), the definition of "related" is essentially the same.

-5-

similar character." Instead, the offenses charged were related because the evidence indicated that defendant engaged in ongoing acts constituting parts of his overall scheme or plan to package cocaine for distribution. [*Id*. at 234-235.]

The Court further held that even if the trial court erred, the error was harmless because "the evidence of each charged offense could have been introduced in the other trial under MRE 404(b)." *Id*. at 243.

Here, the trial court ruled that defendant's cases could be tried together because, although they involved "two separate incidents," they were "close enough in time involving the same circumstance." The trial court also ruled that there would not be separate juries and stated that the cases were "part of like a similar sequence of events." The trial court subsequently reaffirmed its ruling, stating "we have the same people doing something similar."

The trial court did not violate MCR 6.120 by consolidating defendant's cases because the offenses were "related." MCR 6.120(B)(1). The record evidence supports the conclusion that defendant was involved in a scheme to perpetrate carjackings and armed robberies on female victims at night. Similar to the offenses in *Williams*, 483 Mich at 234-235, the offenses in this case were related not merely because they involved similar conduct, but because they were "a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1)(c). The scheme or plan was evidenced by the same co-perpetrator in each case, similar victims, similar circumstances, and the fact that the acts occurred on the same day.

Further, even if the trial court erred in consolidating the cases, any error was harmless. See *Williams*, 483 Mich at 243. Contrary to defendant's assertion that consolidation effectively violated MRE 404(b) by allowing evidence of other crimes to prove his propensity to commit carjackings, the evidence of each charged offense could have been introduced in the other trial to show a "scheme, plan, or system in doing an act" or "identity." MRE 404(b)(1). Further, joinder may be harmless if the evidence of guilt is overwhelming. See *Williams*, 483 Mich at 244, citing *Byrd v United States*, 551 A2d 96, 99 n 8 (DC Cir, 1988). In both cases, the eyewitness testimony by a victim identifying defendant constituted overwhelming evidence of defendant's guilt.

### III. RIGHT TO PRESENT ALIBI DEFENSE

Next, defendant contends that the trial court erred in refusing to allow him to present an alibi defense based on his failure to comply with the notice requirement. We disagree.

The trial court's refusal to allow a defendant to introduce an alibi witness is reviewed for an abuse of discretion. See *People v Travis*, 443 Mich 668, 679-680; 505 NW2d 563 (1993). "An abuse of discretion occurs when [the] trial court's decision is outside the range of principled outcomes." *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014).

MCL 768.20(1) requires a defendant file a notice of his intention to claim an alibi defense "at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs." If a defendant fails to file such notice, "the court shall exclude evidence offered by the defendant for purposes of establishing an alibi . . . ." MCL 768.21(1). In *Travis*, 443 Mich at 679, our

-6-

Supreme Court concluded, notwithstanding the language of the statute, that a trial court has discretion "to fix the timeliness of notice in view of the circumstances." The Court stated that in determining whether to exclude the testimony of an alibi witness, the trial court should consider:

> (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case. [*Id*. at 682 (citation and quotation marks omitted).]

Defendant filed a notice of his intent to raise an alibi defense on the fourth day of trial. The alibi witness was permitted to testify outside of the presence of the jury prior to the trial court's ruling on defendant's motion. The trial court then denied the motion based on the fact that it was untimely and because the factors listed in *Travis* did not favor the trial court exercising its discretion to allow such testimony. The trial court stated that the veracity of the alibi witness was questionable given the length of time since defendant was arrested, no reason was given for the delay, and the prosecution had already rested its case and was unable to present a case that contemplated the alibi defense. The trial court noted that, had the prosecution been aware of defendant's alibi defense, its plea offer with Wells could have required Wells to testify in defendant's case.

We hold that the trial court did not abuse its discretion in refusing to allow defendant to present the testimony of an alibi witness. See *Travis*, 443 Mich at 679-680. First, at the time defendant raised the issue of the alibi defense, the prosecution had already rested its case. See *id*. at 682. Although the prosecution was allowed to interview the witness, it had no time to prepare for the defense. As the trial court noted, the prosecution may also have been prejudiced in its ability to rebut the alibi defense, given that Wells had already pleaded guilty without any requirement that he testify against defendant. Second, there was no reason offered for the delay. See *id*. The witness testified that she did not come forward because she was busy working, but there was no reason provided for defendant's failure to mention his alibi defense. Third, there were no mitigating factors. See *id*. Fourth, there was strong evidence, specifically eyewitness testimony, against defendant in both cases. See *id*. Finally, the alibi witness's testimony lacked credibility; although she testified that defendant only left her home once that evening, at approximately 1:00 a.m., there was no indication that she was with him the entire time. Also, according to her testimony, her two adult sons were also present that evening and did not come forward as alibi witnesses. Thus, the trial court's decision to exclude the testimony was not outside the range of reasonable and principled outcomes. See *Duenaz*, 306 Mich App at 90.

## IV. JURY SELECTION

Defendant next contends that the trial court denied him a fair trial when it allowed a juror to serve after defendant informed the court that the juror had had previous contact with defendant while the juror was a Michigan Department of Corrections (MDOC) administrator, and in failing to individually question the juror regarding defendant's claim. We disagree.

Generally, a party must preserve a jury selection issue by exhausting all of his peremptory challenges or refusing to express satisfaction with the jury. *People v Jendrzejewski*, 455 Mich 495, 514 n 19; 566 NW2d 530 (1997) (citation omitted). If the offense for which a defendant is charged is punishable by life imprisonment, the defendant is entitled to 12 peremptory challenges; otherwise, the defendant is entitled to five peremptory challenges. MCL 768.12(1); MCL 768.13(1). Both armed robbery and carjacking are punishable by life imprisonment. MCL 750.529; MCL 750.529a(1). Defendant exercised only eight peremptory challenges. Further, defendant did not refuse to express satisfaction with the jury.[5] Accordingly, this issue is not preserved. *Jendrzejewski*, 455 Mich at 514 n 19; see also *People v Legrone*, 205 Mich App 77, 82; 517 NW2d 270 (1994) ("When the defendant expressed satisfaction with the jury with several peremptory challenges remaining, he waived the issue whether a juror should have been excused for cause.").

"We review for [an] abuse of discretion a trial court's rulings on challenges for cause based on bias." *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000). Unpreserved constitutional issues are reviewed for plain error affecting defendant's substantial rights. *People v Henry (After Remand)*, 305 Mich App 127, 152; 854 NW2d 114 (2014).

Although there is a constitutional right to an impartial jury, jurors are presumed to be impartial and "[t]he burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008) (citations and quotation omitted). Grounds to challenge a juror for cause include that the person:

> (2) is biased for or against a party or attorney;
>
> (3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be;
>
> (4) has opinions or conscientious scruples that would improperly influence the person's verdict[.] [MCR 2.511(D).]

This Court has stated:

> A four-part test is used to determine whether an error in refusing a challenge for cause merits reversal. There must be a clear and independent showing on the record that (1) the court improperly denied a challenge for cause, (2) the aggrieved party exhausted all peremptory challenges, (3) the party demonstrated the desire to excuse another subsequently summoned juror, and (4) the juror

---

[5] We note that trial counsel did not explicitly express satisfaction with the jury either, but rather indicated that he was not going to exercise any more peremptory challenges, at which point the trial court stated, "We have a jury."

-8-

whom the party wished later to excuse was objectionable. [*People v Lee*, 212 Mich App 228, 248-249; 537 NW2d 233 (1995).]

Defendant fails to satisfy the four-part test. See *Lee*, 212 Mich App at 248-249. First, the trial court did not improperly deny defendant's challenge for cause, because defendant did not overcome the presumption that the juror was impartial. See *Miller*, 482 Mich at 550. During voir dire, the juror at issue indicated that she was retired from the Department of Corrections. She also indicated that she would be fair and impartial. On the third day of trial, trial counsel advised the court that defendant had informed him that the juror, as part of her administrative duties in the Department of Corrections, had caused him to be moved from a certain facility to a higher quarantine facility. However, during voir dire the trial court had twice asked the jurors whether they recognized anyone, and the juror in question had not indicated that she knew defendant. "This Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *Williams*, 241 Mich App at 522. There is also no support for defendant's contention that the trial court was required to separately question the juror, apart from the rest of the jury. Second, defendant did not exhaust all peremptory challenges. See *Lee*, 212 Mich App at 249. Accordingly, the trial court did not abuse its discretion, *Williams*, 241 Mich App at 521, nor was there plain error affecting defendant's substantial rights. See *Henry*, 305 Mich App at 152.

## V. RIGHT TO A PUBLIC TRIAL AND INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant contends the trial court denied him the right to a public trial when it purportedly closed the voir dire proceedings to the public or, alternatively, that his trial counsel was ineffective for failing to object to the closure. We disagree.

The issue regarding the right to a public trial was not raised before, addressed, or decided by the trial court. Therefore, it is unpreserved. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). We review a "defendant's forfeited claim that the trial court violated his Sixth Amendment public trial right" for plain error. *People v Vaughn*, 491 Mich 642, 664; 821 NW2d 288 (2012).

Defendant's claim of ineffective assistance of counsel is limited to errors apparent on the record, because he failed to move for a new trial or a *Ginther*[6] hearing. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012); *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's findings of fact are reviewed for clear error and the questions of constitutional law are reviewed de novo. *Id*.

"It is . . . 'well-settled' that the Sixth Amendment right to a public trial extends to voir dire." *Vaughn*, 491 Mich at 665 (citation omitted). "[T]he party seeking to close the hearing

---

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

must advance an overriding interest that is likely to be prejudiced . . . ." *Id.* (citation and quotation marks omitted).

However, defendant's claim that the trial court closed the voir dire proceedings to the public is not supported by the record. The record instead reflects that *after* the jury was selected and excused for lunch, and while the parties were discussing other matters, the following exchange occurred:

> *DEPUTY*: Step out.
>
> *THE COURT*: Get out, get out.
>
> Get out of the courtroom now.
>
> Who -- you know who you are, who just made that comment.
>
> Come on, do you want to leave, or us have you leave?
>
> *DEPUTY*: I'm gonna have everybody if you don't step out.
>
> Everybody go. Go.
>
> Everybody go.
>
> Everybody out.
>
> *THE COURT*: Cannot even respect the courtroom. This is not a game we're playing here.
>
> Get some more deputies on the floor here, please.

Although these statements suggest that the deputy ordered everyone out of the courtroom, as noted, the jury had already been selected. Thus, there is no evidence that the courtroom was closed during voir dire. Additionally, the trial court made subsequent statements that indicated that the courtroom had not been closed to the public. Shorty after the above exchange, the court recessed for lunch. The record indicates that after the recess, and after the jurors were brought back into the courtroom, the trial court made additional comments to individuals in the courtroom:

> I'm gonna give you one warning:
>
> If anybody says anything to a victim, or a victim's family, in any kind of way, if you even look at them the wrong way and I know about it, I'm gonna hold you in contempt of Court, and deal with you accordingly.
>
> You are to be proper in the courtroom, and respect to where you are in this courtroom.
>
> If you want to get stupid, I'm gonna get stupid with you.

-10-

So, you're forewarned.

Thus, even assuming that a closure occurred, it was brief and was not during voir dire (as defendant contends). Additionally, "a court necessarily has the inherent power to preserve or restore order by temporarily ejecting from the courtroom disruptive and disorderly persons . . . ." *In re Hague*, 412 Mich 532, 561; 315 NW2d 524 (1982). Therefore, we hold that defendant did not establish plain error affecting his substantial rights. See *Vaughn*, 491 Mich at 664.

Further, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Given that the record indicates that the courtroom was not closed to the public during voir dire, trial counsel was not ineffective for failing to make a meritless argument. Thus, defendant's claim of ineffective assistance of counsel also fails.

## VI. SUFFICIENCY OF THE EVIDENCE IN DOCKET NO. 316546

Finally, defendant contends that there was insufficient evidence that he aided and abetted in the carjacking of the victim in Docket No. 316546. We disagree.

> We review de novo a defendant's challenge to the sufficiency of the evidence. In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. However, we do not interfere with the factfinder's role of determining the weight of the evidence and the credibility of witnesses. It is for the trier of fact, rather than this Court, to determine what inferences can be fairly drawn from the evidence and to determine the weight to be afforded to the inferences. The prosecution need not negate every reasonable theory of innocence, but must only prove its own theory beyond a reasonable doubt "in the face of whatever contradictory evidence the defendant may provide." Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime. We resolve all conflicts in the evidence in favor of the prosecution. [*People v Kosik*, 303 Mich App 146, 150-151; 841 NW2d 906 (2013) (citations omitted).]

The elements of carjacking are (1) the defendant was in the course of committing a larceny of a motor vehicle, MCL 750.529a(1), (2) the defendant did so in the presence of any operator, passenger, or person in lawful possession of the motor vehicle, and (3) the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear. *People v Davenport*, 230 Mich App 577, 579; 583 NW2d 919 (1998).[7]

---

[7] Although the crime of carjacking previously stated that a defendant is guilty of carjacking if he "robs, steals, or takes a motor vehicle" by force or violence or threat of force or violence or by putting the victim in fear, "the carjacking statute was amended to describe the offense as one that

The elements of aiding and abetting are:

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010) (citation and quotation marks omitted; alteration in original).]

"In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime." *People v Moore*, 470 Mich 56, 71; 679 NW2d 41 (2004). "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime." *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). This Court has found sufficient evidence to convict a defendant of aiding and abetting where he acted as a lookout and drove away with the perpetrator. See *People v Turner*, 213 Mich App 558, 579; 540 NW2d 728 (1995), disapproved in part on other grounds *People v Mass*, 464 Mich 615, 627-628 (2001). "An aider and abetter's [sic] knowledge of the principal's intent can be inferred from the facts and circumstances surrounding an event." *Bennett*, 290 Mich App at 474. "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Turner*, 213 Mich App at 569.

There was sufficient evidence to support defendant's carjacking conviction as aider and abettor. Defendant does not dispute that a carjacking occurred. Viewing the evidence in the light most favorable to the prosecution, there was evidence that defendant performed acts that assisted in the commission of the carjacking. See *Kosik*, 303 Mich App at 150; *Bennett*, 290 Mich App at 472. The evidence established that defendant and Wells arrived at the party store together and entered the store several times before the carjacking. They then drove across the street before returning and parking next to the victim's car. Just before Wells perpetrated the theft of the victim's vehicle, defendant got into the driver's seat of the vehicle in which he and Wells had arrived. A rational trier of fact could infer that defendant assisted in scoping out the location and choosing the victim, and was acting as a lookout while Wells perpetrated the offense. Further, defendant provided assistance by driving away the vehicle in which he and Wells had arrived. Defendant's assistance aided and encouraged the commission of the carjacking. See *Moore*, 470 Mich at 71. Given defendant's actions, he was not merely present at the scene. See *Norris*, 236 Mich App at 419-420.

The circumstantial evidence further supports the finding that defendant intended the commission of the crime or knew that Wells intended its commission at the time defendant gave

occurs during the course of committing a larceny, with that phrase defined as including acts 'that occur in an attempt to commit the larceny . . . .' " *People v Cain*, 299 Mich App 27, 44; 829 NW2d 37 (2012), aff'd in part and vacated in part 495 Mich 874 (2013) (citation omitted).

-12-

assistance.  See *Bennett*, 290 Mich App at 474.  Defendant's intent can be inferred from his close association with Wells before the crime, including going in and out of the store, his acts in the other docket, and his participation in driving away the vehicle in which they had arrived.  Defendant's driving away, or flight after the incident, is further evidence of his intent.  See *Turner*, 213 Mich App at 569.  Accordingly, there was sufficient evidence to support defendant's carjacking conviction as an aider and abettor.

Defendant also asserts that there was insufficient evidence to support his armed robbery conviction and CCW conviction as an aider and abettor, but fails to elaborate on his arguments regarding those offenses.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."  *Henry*, 305 Mich App at 142 (citation and quotation marks omitted).  Nonetheless, there was sufficient evidence to support these convictions.

The elements of armed robbery are:

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

There was evidence that Wells committed an armed robbery when he pointed a gun at the victim, took her purse, pushed her out of the vehicle, and drove away in her car with her belongings.  For the same reasons discussed above, there was also sufficient evidence that defendant assisted in the commission of the armed robbery by casing the scene, acting as a lookout, and, at the very least, driving away the car in which he and Wells had arrived.  See *Bennett*, 290 Mich App at 472.  Defendant's intent, including his knowledge that Wells was armed with a gun, can also be inferred from his close association with Wells before the crime, including his acts in the other case, as well as his driving away the vehicle in which they arrived.  See *Turner*, 213 Mich App at 569.

Defendant was also convicted of carrying a firearm in a motor vehicle.  The concealed weapon statute provides:

A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license. [MCL 750.227(2).]

"To support a conviction for carrying a weapon in [a vehicle], the prosecution must show: (1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he was 'carrying' it." *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999) (citation and quotation marks omitted; alteration in original). This Court has found sufficient evidence that the defendant was carrying a weapon where the weapon was readily accessible to him and the defendant owned the vehicle and was driving it. *Id*. Further, a jury may properly convict a defendant of CCW if it could find that the gun "was being carried for the purposes of unlawful enterprise" in which all parties were engaged, and that defendant had knowledge that the gun was being carried by a co-perpetrator. See *People v Pearce*, 20 Mich App 289, 292; 174 NW2d 19 (1969), see also *People v Haack*, 396 Mich 367, 377 n 13; 240 NW2d 704 (1976).

In this case, there was evidence that Wells used a gun during the carjacking and, thus, that the weapon was present in the vehicle occupied by defendant, which they arrived in together before the carjacking. See *Nimeth*, 236 Mich App at 622. Defendant's knowledge that there was a weapon in the vehicle he was occupying can also be inferred from these circumstances. A rational trier of fact could also conclude that defendant was carrying the weapon given that he was sitting in the front passenger's seat next to Wells when they arrived, and thus likely had access to the weapon, and the fact that defendant drove the vehicle away after the carjacking. See *id*. Finally, a rational trier of fact could in any event conclude that the gun "was being carried for the purposes of unlawful enterprise" in which all parties were engaged, and that defendant had knowledge that the gun was being carried by Wells, a co-perpetrator. *Pearce*, 20 Mich App at 292. Thus, there was sufficient evidence to convict defendant of carrying a concealed weapon.

Affirmed.

/s/ Jane M. Beckering
/s/ Kathleen Jansen
/s/ Mark T. Boonstra

-14-