# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

ANTONIO DIONCA LAY,

        Defendant-Appellee.

UNPUBLISHED
August 3, 2017

No. 330802
Genesee Circuit Court
LC No. 14-036586-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

KASHIF OMAR REYNOLDS,

        Defendant-Appellee.

No. 331143
Genesee Circuit Court
LC No. 14-036594-FC

---

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendants were tried in a joint trial with separate juries. In Docket No. 330802, a jury convicted defendant Antonio Dionca Lay of two counts of armed robbery, MCL 750.529; first-degree home invasion, MCL 750.110a(2); felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Lay as a habitual offender, second offense, MCL 769.10, to prison terms of 25 to 40 years for the armed robbery convictions, 20 to 30 years for the first-degree home invasion conviction, 5 to 10 years for the felon-in-possession of a firearm conviction, and to a mandatory two-year consecutive term for the felony-firearm conviction. Lay appeals as of right. In Docket No. 331143, a jury convicted defendant Kashif Omar Reynolds of two counts of armed robbery, MCL 750.529; first-degree home invasion, MCL 750.110a(2); felon in possession of a firearm, MCL 750.224f; and felony-firearm, MCL 750.227b. The trial sentenced Reynolds as an habitual offender, fourth offense, MCL 769.12, to prison terms of 25 to 40 years for the armed robbery convictions, 20 to 30 years for the first-degree home invasion conviction, 5 to 10 years for the felon in possession conviction, and to a consecutive 5-year term for the

-1-

felony-firearm (second offense) conviction. The trial court subsequently resentenced Reynolds to identical prison terms. Reynolds appeals as of right. We affirm both defendants' convictions, affirm Reynolds' sentence, and vacate Lay's sentence and remand for resentencing.

## I. FACTUAL BACKGROUND

This case arises from a home invasion and robbery at the home of Sharise Miller. During the evening of November 3, 2014, Sharise's adult sons, Antonio Miller and Thomas Miller, were at the home with Sharise's niece, Laquetta Cade, Sharise's cousin, Treyvon, and her nephews, Demetrious and Dominique. Everyone, with the exception of Sharise and Cade, was in the dining room "shooting dice." Around 8:00 or 8:30 p.m., another of Sharise's sons, Edward Miller, arrived at the home with Artrell Lay, Saseen Lay, and defendants. Sharise engaged in a conversation with defendants for approximately 35 minutes. She did not observe either defendant "gambling," but defendant-Lay told Sharise that he lost money in "side betting." Sharise observed that both defendants had facial tattoos, with Lay having a tattoo that said "haze" by his eye, the letter "B" tattooed on the left side of his face, and a tattoo of the New York Yankees sign. Both defendants were wearing "all black," and Reynolds was wearing a Gucci belt. Edward asked Sharise if he could borrow $10 from her. Sharise counted out $293 or $294 while sitting on her bed, which could be seen from the dining room, but she did not loan any of the money to Edward. Edward, Artrell, Saseen, and both defendants left the home around 10:30 p.m., while Treyvon, Demetrious, and Dominique left approximately ten minutes later.

Shortly after midnight, Sharise testified that she was in her bedroom when defendants kicked in the front door of the home and entered without permission. She described defendants as both wearing the same clothing that they had been wearing earlier that night but with black ski masks. Sharise heard someone say, "Get on the . . . floor." According to Sharise, Reynolds went to her room, put a gun to her head, and made her sit on the floor against the wall. Sharise stated that both defendants were holding guns. Thomas was lying flat on the kitchen floor, and Sharise observed him being beaten on the head with a gun by Lay, and she observed Antonio lying flat on the dining room floor being stomped on by Reynolds. Sharise stated that she could see both defendants' eyes through the eye holes in the ski masks, and she observed the "dots" of a tattoo near Lay's eye. Cade testified that she saw Reynolds's dreadlocked hair sticking out of the ski mask and saw the tip of a tattoo through his mask. According to Cade, defendants took $10 and a cell phone from her. Sharise testified that she gave Reynolds $293 from the pocket of a coat hanging on her door. The robbery lasted about 20 minutes.

After the robbery, Sharise called 911 and gave a description of the perpetrators to the 911 operator. She also called Edward and told him that she had been robbed and that his friends had committed the robbery. When police arrived, Sharise told Officer Eric White that two men who were at her home earlier that evening had committed the robbery, and she provided the names of the suspects. The next morning, both Sharise and Cade separately identified defendants in photographic arrays.

Police obtained warrants for both defendants' arrests and referred the matter to a fugitive team for arrests on the warrants. The team set up surveillance and observed one or both defendants loading items into a vehicle. Officers followed the vehicle to the parking lot of a Taco Bell restaurant and arrested defendants in the parking lot. A duffel bag found in the vehicle

contained a rifle matching Sharise's description, a handgun, ammunition, and rubber or latex gloves. A black ski mask was found in the car, and a black ski mask was found on Reynolds's person. Reynolds was also wearing a Gucci belt at the time of the arrest. Sharise identified a photo of the Gucci belt recovered from Reynolds as similar to the one he wore at her home that night. Sharise identified the handgun recovered during the arrest as similar to the one used to beat Thomas, and identified the rifle recovered during the arrest as "the same gun" held to her head "if you put the barrel back on." Cade also identified the rifle.

During interviews with police, Lay stated that Reynolds had committed the robbery "with another of his friends" and he denied taking part in the robbery.[1] Reynolds admitted to being present at the time of the robbery but claimed that he stood outside during the robbery and denied taking an active role in the robbery.[2] Reynolds told police that he went back to the home "out of loyalty" but would not say to whom he was loyal. He denied that Lay participated in the robbery, and he denied wearing a ski mask or having a gun that night.

Docket No. 330802

II. SUFFICIENCY OF THE EVIDENCE

Lay argues that the prosecutor failed to present sufficient evidence to establish beyond a reasonable doubt his identity as a perpetrator of the crimes.[3] When ascertaining whether sufficient evidence was presented at trial to support a conviction, we view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). The prosecution must prove the identity of the defendant as the perpetrator beyond a reasonable doubt. *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient. *Nowack,* 462 Mich 392, 400; 614 NW2d 78 (2000); *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is for the trier of fact to resolve, and this Court will not resolve it anew. *Davis,* 241 Mich App at 700.

Here, both Sharise and Cade unequivocally identified Lay as one of the robbers. The evidence revealed that each victim selected Lay from a photographic lineup without hesitation and identified Lay as one of the robbers at trial. Sharise had seen and spoken to defendants at her house earlier the same evening and testified that she recognized the robbers as Lay and Reynolds because they were wearing the same clothing that they had been wearing earlier in the evening. Sharise also knew that Lay had tattoos on his face, and she was able to view a small part of a tattoo through the eyehole of the ski mask that Lay was wearing. Cade also had

---

[1] This testimony was admitted only in front of Lay's jury.

[2] This testimony was admitted only in front of Reynolds' jury.

[3] Appeals regarding the sufficiency of the evidence are reviewed de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002).

observed defendants earlier in the evening and testified that the clothing the robbers wore matched the clothing that defendants wore. This testimony was sufficient to establish Lay's identity as one of the robbers.[4]

## III. GREAT WEIGHT OF THE EVIDENCE

Lay argues that the jury's finding that he was one of the perpetrators of the crime was against the great weight of the evidence.[5] The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). As previously discussed, there was sufficient evidence in corroboration of the victims' positive identification of Lay as one of the perpetrators of the offenses. The record evidence did not preponderate against Lay's convictions.

## IV. RIGHT TO COUNSEL

Lay argues that the trial court abused its discretion by failing to conduct an adequate inquiry into his request for substitute counsel.[6] "Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotations and citation omitted). "Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id.* (quotations and citation omitted).

Lay requested substitute counsel at one pretrial hearing on April 6, 2015. At that hearing, the trial court addressed each of Lay's concerns. At the next pretrial hearing on May 18, 2015, the court noted that Lay had written a letter to the court and asked Lay if there were any issues that he wanted to discuss. Despite Lay's negative response, the court asked Lay about his allegation that he had not received "paperwork," and the court then told the prosecutor and defense counsel to work together to provide Lay with copies of any reports that he did not have.

---

[4] Apart from the positive and unequivocal identifications, the guns found in Lay's presence at his arrest matched the description given by Sharise.

[5] "To preserve a great-weight claim, a party must move for a new trial in the trial court." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Lay did not move for a new trial in the trial court. Lay did move in this Court to remand to file a motion for a new trial but that motion was denied. Therefore, this issue is unpreserved and is reviewed for plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). "An error affect[s] a defendant's substantial rights if it affected the outcome of the lower court proceedings." *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307, appeal held in abeyance 872 NW2d 492 (2015).

[6] A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotations and citation omitted).

Lay did not express any dissatisfaction with counsel during the next five pretrial hearings between June 1 and August 3, 2015. Lay did express dissatisfaction with counsel in a letter that was received by the court on August 10, 2015, but at the next pretrial hearing on August 20, 2015, Lay did not express a desire for substitute counsel or raise any issues regarding counsel with the court.

Lay acknowledges that he did not address the concerns expressed in the August letter at any pretrial hearing subsequent to authoring the letter, but he argues that the letter should have been enough to generate an inquiry by the trial court. However, the trial court had previously addressed Lay's concerns by ordering counsel to provide Lay with copies of any reports that he had, ordering a polygraph examination, and ensuring that Lay would have clothing for trial. And, in May 2015, the trial court addressed the same grievance that Lay subsequently attached to the August 10, 2015 letter. A trial court is obligated to inquire about the truth of a defendant's allegations that there is a *dispute* which has led to the destruction of communication and a breakdown in the attorney-client relationship. *People v Bass*, 88 Mich App 793, 802; 279 NW2d 551 (1979). Lay's dissatisfaction here stemmed from an alleged lack of personal contact and communication with his counsel, and Lay did not assert that a dispute existed or that there was a fundamental trial tactic involved. Thus, Lay's August 2015 letter was not supported by good cause, and the trial court did not abuse its discretion by failing to again explore Lay's dissatisfaction with his appointed counsel.[7]

## V. SCORING OF THE SENTENCING GUIDELINES

Lay contends that the trial court erred in scoring offense variables (OV) 2 and 8.[8] "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). In *People v Lockridge*, 498 Mich 358, 392 n 28, 399; 870 NW2d 502, cert den 136 S Ct 590 (2015), our Supreme Court held that the sentencing guidelines are advisory only but also clarified that the highest number of points must be assessed for all OVs, regardless of whether the OVs require judicial fact-finding. Following *Lockridge*, this Court concluded that when the trial court sentences a defendant on the basis of an incorrect sentencing guidelines range, the

---

[7] Moreover, the record indicates that counsel was familiar with the facts of the case, diligently examined witnesses, made relevant objections, and acted diligently throughout to protect Lay's rights. Thus, even if the trial court had address Lay's allegations and denied the request for a substitution of counsel, it would have not abused its discretion by denying the request. Any error was harmless.

[8] "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

defendant is entitled to be resentenced.  See *People v Sours*, 315 Mich App 346, 350–351; 890 NW2d 401 (2016).

Lay argues that the trial court erred when it assessed 10 points under OV 2.  Ten points should be assessed for OV 2 when the offender possessed or used a short-barreled rifle or a short-barreled shotgun.  MCL 777.32(1)(c).[9]  Five points should be assessed when the offender possessed or used a pistol, rifle, shotgun, or knife or other stabbing weapon.  MCL 777.32(1)(d). MCL 777.31 does not contain its own definition of short-barreled rifle or short-barreled shotgun. The penal code defines a "short-barreled rifle" as "a rifle having 1 or more barrels less than 16 inches in length or a weapon made from a rifle, whether by alteration, modification, or otherwise, if the weapon as modified has an overall length of less than 26 inches."  MCL 750.222(k).

Sharise testified that the rifle presented at trial was the same gun used during the robbery "if you put the barrel back on."  She testified that the rifle had a barrel on it at the time of the robbery.  Cade described the rifle as having "a long barrel" and "about this big," apparently demonstrating the size of the rifle with the use of her hands.  The PSIR noted that Sharise described Reynolds possessing "either a rifle or shotgun, brown in color, possibly wood, with black tape on it and a banana clip coming from the bottom."  When defendants were arrested, the police recovered a "Ruger mini 30 rifle that had been sawed off at the barrel and the stock (the stock, what was left on it, was taped with black electrical tape)."  Neither victim clearly identified the length of the rifle barrel on the record, and their descriptions tend to suggest that the rifle contained a longer barrel than the one that was on the rifle when it was recovered. Under these circumstances, a preponderance of the evidence did not support a score of 10 points for OV 2.  Rather, on this record a preponderance of the evidence supports a score of 5 points.

Lay also argues that the trial court erred when it assessed 15 points for OV 8.  OV 8 addresses "victim asportation or captivity."  MCL 777.38(1).  OV 8 states that 15 points are to be assessed when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense."  MCL 777.38(1)(a).  "[M]ovement of a victim that is incidental to the commission of a crime nonetheless qualifies as asportation."  *People v Barrera*, ___ Mich ___; 892 NW2d 789, 791 (2017) (Docket No. 151282), slip op p 3.  "If a victim is carried away or removed 'to another place of greater danger or to a situation of greater danger,' MCL 777.38(1)(a), the statutory language is satisfied."  *Id*. at 793-794, slip op p 7.

Evidence was presented that, during the robbery, Sharise was ordered at gunpoint to go with Lay into a bedroom some distance from the living room where all the other victims were being held.  This movement was incidental to the crime since she was taken to the room in order to get the money demanded by the robbers.  However, under *Barrera*, it is sufficient.  And we find no error in the trial court's conclusion that being alone in a bedroom with a man holding a gun is a situation of greater danger than being in a room with multiple other victims and

_____

[9] MCL 777.32(2) provides that "[i]n multiple offender cases, if 1 offender is assessed points for possessing a weapon, all offenders shall be assessed the same number of points."

witnesses. With 5 points instead of 10 assessed for OV 2, Lay's OV score would have been 75 points instead of 80 points. This reduction places him in OV Level IV instead of OV Level V and changes the minimum range calculated under the guidelines from 171 to 285 months to 135 to 225 months. MCL 777.62. Because the scoring error alters the minimum range calculated under the sentencing guidelines, Lay is entitled to resentencing. See *People v Francisco*, 474 Mich 82, 89-91, 89 n 8; 711 NW2d 44 (2006). On remand, the trial court may hear additional testimony relevant to its scoring of OV 2.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Lay argues that he was denied the effective assistance of counsel as a result of several errors by his trial counsel.[10] There are "two components" to establishing an ineffective-assistance-of-counsel claim, the defendant must show first, "that counsel's performance was deficient," and second, that "the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citation omitted). A defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011), citing *Strickland*, 466 US at 694-696. "[D]efendant has the burden of establishing the factual predicate for his claim . . . ." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

### A. Notice of Alibi Defense

Lay argues that his trial counsel was ineffective for failing to file a notice of an alibi defense, thereby preventing him from calling alibi witnesses at trial. He also argues that counsel advised him that he could not take the stand in his own defense concerning his whereabouts at the time of the offenses.

Alibi testimony is "testimony offered for the sole purpose of placing the defendant elsewhere than at the scene of the crime." *People v McGinnis*, 402 Mich 343, 345; 262 NW2d 669 (1978) (citation and quotation marks omitted). To present alibi testimony, a defendant must serve notice on the prosecution under MCL 768.20(1). The failure to file and serve the requisite notice mandates exclusion of the evidence establishing the alibi apart from the defendant's own testimony, MCL 768.21; *People v Merritt*, 396 Mich 67, 89; 238 NW2d 31 (1976), unless the trial court rules otherwise, *People v Travis,* 443 Mich 668, 679–680; 505 NW2d 563 (1993). When an ineffective assistance of counsel claim is premised on counsel's failure to file notice under MCL 768.20(1) and consequent failure to present an alibi witness, the defendant must demonstrate that the witness would have given favorable alibi testimony. *People v Pickens*, 446 Mich 298, 327; 521 NW2d 797 (1994).

---

[10] Defendant did not move for a new trial based on ineffective assistance of counsel, or request a *Ginther* hearing. Because no factual record was created in regard to defendant's claim of ineffective assistance of counsel, as is the case here, our "review is limited to mistakes apparent on the lower court record." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

Initially, we note that there is no support in the record for Lay's contention that the trial court's ruling prompted his counsel to refuse to let Lay testify on his own behalf concerning his whereabouts at the time of the offenses. Lay identifies one witness whose testimony he alleges would have supported his alibi defense – Edward Miller. Lay has not established that Edward would have offered favorable alibi testimony.[11] Edward's purported testimony is not on the record. Further, Edward testified at trial that after leaving Sharise's house he was dropped off at Lay's brother's house and then went home. Thus, Edward's testimony at trial indicated that he did not actually know where Lay was at the time of the robbery, and, therefore, there is no indication that he could have even provided an alibi. See *People v McMillan*, 213 Mich App 134, 140-141; 539 NW2d 553 (1995). Thus, even if counsel's failure to provide notice under MCL 768.20(1) fell below an objective standard of reasonableness, Lay has not shown that there was a reasonable probability that the outcome of the proceedings would have been different.

## B. Pretrial Investigation

Lay also argues that trial counsel was ineffective by failing to interview any of the prosecution's witness as part of a pretrial investigation of the case. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). On this record, it cannot be determined what pretrial investigation actions trial counsel took. It is possible that counsel actually met with some or all of the witnesses on the prosecution's witness list, and it is equally possible that defense counsel sat back and made no investigation. Defendant's failure to move for a *Ginther* hearing precluded him from being able to create the factual record necessary to evaluate this claim. We can make no assumptions and, therefore, cannot adjudge counsel ineffective. Accordingly, we reject this ineffective assistance claim.

## C. Failure to Interview Reynolds

Lay argues that trial counsel was ineffective by failing to interview Reynolds despite knowing that Reynolds had stated to police that Lay was not a participant in the robbery and by failing to call Reynolds to testify on Lay's behalf. Again, it is not apparent on this record that trial counsel failed to interview Reynolds or to conduct a proper investigation. Defendant did not move for a *Ginther* hearing, and we cannot speculate about what Reynolds would or would not have said on the stand had he been called. Therefore, Lay has not established the factual predicate for his claim. See *Hoag*, 460 Mich at 6.

With respect to defendant's claim that his counsel was ineffective for failing to call Reynolds to testify, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Lay has failed to overcome this strong presumption in light of the lack of record evidence that Reynolds would have testified favorably

---

[11] Lay did not make an appropriate offer of proof regarding any potential alibi testimony. Lay relies on hearsay testimony offered by Sharise at the preliminary examination regarding comments Edward purportedly made to her.

for Lay, or indeed testified at all rather than invoked his privilege against self-incrimination. Additionally, Lay was not prejudiced. "The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). Here, Lay claims that Reynolds would have testified that Lay was not present when the crimes were committed. However, this defense was submitted to the jury by way of Lay's own statements made during his police interview. We also find it unlikely that a jury would have believed the testimony of a codefendant over several other witnesses who testified to defendant's involvement in the crime. Accordingly, we reject defendant's ineffective assistance claim.

### D. Failure to Object to Unendorsed Witness

Lay argues that trial counsel was ineffective by failing to object to the testimony of Steven Schabel, a member of the fugitive team involved in the arrest of defendants. "The prosecutor's obligation to identify and produce witnesses is governed by MCL 767.40a[.]" *People v Everett*, ___ Mich App ___, ___; ___ NW2d___ (2017) (Docket No. 328660); slip op at 2. This statute obligates a prosecutor to provide a defendant with a list of witnesses that it intends to produce at trial (endorsed witnesses). *Id*. at ___; slip op at 3. Unendorsed witnesses cannot be called unless the defendant agrees or the prosecutor adds to the list of endorsed witness "upon leave of the court and for good cause shown." MCL 767.40a(4).

It appears from the record that the prosecutor violated MCL 767.40a by not disclosing Schabel on a witness list. However, the record also indicates that Schabel was not a "surprise" witness as Lay contends. Schabel was a member of the fugitive team involved in Lay's arrest and in the seizure of the evidence from the vehicle in which Lay was arrested. The items seized during the arrest were discussed at several pretrial hearings. Thus, it appears unlikely that trial counsel would have been "surprised" and "ambushed" by Schabel's testimony. Additionally, Schabel testified in place of another witness who was on the prosecutor's list, Trooper Shingleton. The prosecutor stated that it was seeking to substitute Schabel for Shingleton because, while both were able to provide testimony about what evidence was seized upon defendant's arrest, Schabel was in a better position to provide specific details. Both defendants' counsel expressed on the record that they had no objection, and it is not apparent from the record that this decision fell below an objective standard of reasonableness.

Additionally, Lay has not identified any unfair prejudice arising from counsel's failure to object to Schabel's testimony. He simply asserts that Schabel's testimony was "damning." However, evidence presented by the prosecution in a criminal case is generally damaging for the defense. And, even if Schabel had not testified, it appears that the same or very similar testimony would have been admitted through Shingleton. Law has not demonstrated how Schabel's testimony was sufficiently more prejudicial to his case than what Shingleton's would have been.

## VII. JUDICIAL ERROR

### A. In-Court Identification of Defendants

Lay argues that the trial court invaded the province of the jury and pierced the veil of impartiality by improperly commenting on witnesses' in-court identifications of Lay.[12] "The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments 'were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial.' " *People v Conley*, 270 Mich App 301, 308; 715 NW2d 377 (2006) (citations and quotations omitted). During the prosecution's examination of Sharise, the following exchange occurred:

Q. Okay. And for the record, you've identified Mr. Reynolds and Mr. Lay?

A. Yes.

[*The prosecutor*]: Your Honor, may the record so reflect?

[*The court*]: Yes.

During the prosecutor's examination of Cade, the following exchange occurred:

Q. Okay. And when you woke up to use the restroom who was in the home at that time?

A. Um, those two.

Q. Okay. Anyone else?

A. Yea. My cousins.

Q. Okay. I'm going to break it down. When you say those two we've got four people sitting here. We've got some deputies back here. One at a time described what the person you're referring to is wearing? So for one of those people tell me what he's wearing?

A. He was all in black.

Q. Okay. They were wearing all black at the time. What are they wearing now?

---

[12] Lay did not challenge the trial court's conduct, and, therefore, this issue is not preserved. *People v Metamora Water Service, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). It is reviewed for plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App at 218.

A. Blue and white.

Q. Okay. Do they have jackets on?

A. Do they now?

Q. Do they have jackets on now? Yes?

A. No.

Q. Okay.

[*The prosecutor*]: Your Honor, let the record reflect that when the witness is referring to those two she's looking toward defense counsel table and she's indicating the articles of clothing worn by both Defendants? Just so we're clear about who we're talking about. Okay.

[*The court*]: She's recognizing the one in blue and one in white.

No plain error is evident from the record. The trial court's remarks were not of such a nature as to unduly influence the jury. *Conley*, 270 Mich App at 308. Rather, the trial court properly exercised its duty to address an evidentiary matter by acknowledging the identification testimony for the record. This was well within its discretion to control the trial proceedings. *Id.* at 307-308.

### B. Judicial Comments during Voir Dire

Lay also argues that the trial court "confused" the jury during voir dire regarding the burden of proof and that reversal is required because the jury was given conflicting instructions on the burden of proof.[13] His argument is premised upon the following exchange between the trial court and a potential juror, Ms. Kemp:

Q. And do you understand, Ms. Kemp, that the Defendant is presumed innocent?

A. Yes.

Q. The People must prove his guilt beyond a reasonable doubt?

A. No.

Q. Yes?

---

[13] Because Lay did not object to the trial court's instructional comments during voir dire, this issue is not preserved, and our review is limited to plain error affecting defendant's substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011).

A. Oh. Yeah. Yeah.

Q. You understand it?

A. Yes.

Q. And if that happened would you be able to find the Defendant is guilty?

A. Excuse me?

Q. If the People prove the Defendant is guilty would you be able to come back and say guilty?

A. Yes.

Q. If the evidence is lacking or insufficient would you be able to come back and say not guilty?

A. Yes.

Lay argues that the above exchange "erroneously impressed upon the jury that the prosecutor merely had to " 'prove the Defendant is guilty' without insuring that the jury was properly informed that the constitutionally required standard of proof is 'proof of guilty beyond a reasonable doubt.' " However, in context, the court's reference to "prove the defendant guilty" clearly referenced "guilt beyond a reasonable doubt."[14] Moreover, in both the preliminary instructions to the jury and the final instructions to the jury, the court instructed the jury that the prosecutor must prove each element of the crimes charged beyond a reasonable doubt and instructed the jury on the definition of reasonable doubt. Lay has failed to demonstrate plain error affecting his substantial rights.

C. Reading the Formal Charges Prior to Jury Selection

Lay argues that the trial court invaded the province of the jury when it read the charges against defendants because the charges included venue, which is a question of fact for the jury.[15] Specifically, he asserts that the following comment by the trial court prior to jury selection amounted to a factual determination by the trial court that the jury was bound to follow: "Now the address where this occurred so that you might wonder is 6094 Natchez, as I said, Mount Morris Township, Genesee County, MI."

---

[14] The prosecutor peremptorily challenged Kemp, and she did not serve as a juror in Lay's trial.

[15] Because Lay did not object to the trial court's comments during voir dire, this issue is not preserved, and our review is limited to plain error affecting defendant's substantial rights. *Jackson*, 292 Mich App at 597.

Lay has taken the above comment out of context. MCR 6.412(B) states, "Before beginning the jury selection process, the court should give the prospective jurors appropriate preliminary instructions and must have them sworn." The comment to MCR 6.412(B) states that appropriate preliminary instructions may be found in the Michigan Criminal Jury Instructions. M Crim JI 1.8 instructs the court to read the information in a criminal trial so that the defendant and jury can hear the charges.[16] Here, the trial court told the jury:

> [M]embers of the jury, I'm going to start as I always do by reading to you the formal charges that have been brought in this case against this Defendant. It is alleged in the information that Antonio Lay on or about November 4, 2014, in Mt. Morris Township, Genesee County, Michigan, Count one did in the course of committing a larceny of money assault or put in fear a person present; Sharise Miller, and in the course of that conduct possessed a gun, a danger weapon. Count one is known as Armed Robbery.

> * * *

> In Count three it is alleged that Defendant did break and enter or did enter without permission a dwelling located at 6094 Natchez Drive, with the intent to commit a larceny therein, and while entering, present in, or exiting the dwelling Sharise Miller[] was lawfully present therein. Count three known as Home Invasion in the First Degree.

> * * *

> .... So in any event the following persons may testify. ...

> Cassandra DeRuiter, Theresa Scott, Heather Brown, Thomas Miller, Sharise Miller, Carrie Holka, Officer Jacob Neering, Officer Matt Azelton, Officer Eric White, Laquetta Cade, Lieutenant David Dwy[re], Trooper Ken Shingleton, Ed[ward] Miller, and of course as I said Detective Michael Veach.

---

[16] M Crim JI 1.8 provides:

> (1) This is a criminal case. The paper used to charge the defendant with a crime is called an information.[a1] The information in this case charges the defendant, _____, with the crime of _____, and reads as follows:

> [*Read information.*]

> (2) The defendant has pled not guilty to this charge. You should clearly understand that the information I have just read is not evidence. An information is read in every criminal trial so that the defendant and jury can hear the charges. You must not think it is evidence of [his / her] guilt or that [he / she] must be guilty because [he / she] has been charged.

Now the address where this occurred so that you might wonder is 6094 Natchez, as I said, Mt. Morris Township, Genesee County, Michigan.

Thus, it is clear that the trial court read the information before beginning the jury selection process. There is nothing in the record to suggest that the jurors did not understand that the court was merely providing a statement of the formal charges. It is inconceivable that any juror considered the reading of the information as a finding of fact by the trial court. Lay has failed to demonstrate plain error affecting his substantial rights.

Docket No. 331143

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Reynolds argues that he was denied the effective assistance of counsel at trial by counsel's failure to object to Schabel's testimony that he worked as an investigator with the Department of Corrections. Reynolds maintains that the fact that Schabel was employed by the DOC allowed the jury to conclude that Reynolds had once been within the jurisdiction of the DOC and, therefore, had a prior criminal record.

Reynolds admits that Schabel specifically testified during cross-examination that defendants were not fugitives or escapees from the DOC. Indeed, counsel took steps to ensure that the jury did not speculate that Reynolds was a fugitive or escapee from the DOC. Schabel's testimony did not suggest that Reynolds had a prior criminal history. Reynolds' argument is premised on nothing more than his speculation that Schabel's testimony allowed the jury to conclude that Reynolds had once been within the DOC's jurisdiction.

## II. PROSECUTOR MISCONDUCT

Reynolds argues that he was denied a fair trial when the prosecutor stated during closing arguments that the weapon used during the robbery "fires the same round as an AK47" and then described the AK47 as "the most widely used military rifle in the world." He maintains that the reference to the AK47 served no purpose other than to inflame the jury's emotions.[17]

The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Where a claim of prosecutorial misconduct is based on the assertion that the prosecutor made an improper argument, the "remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230, (2005).

---

[17] Because Reynolds did not object to the alleged prosecutorial misconduct and request a curative instruction, this argument is unpreserved and is reviewed for plain error affecting defendant's substantial rights. *People v Bennett*, 290 Mich App 465, 475-476; 802 NW2d 627 (2010).

A detective testified that the ammunition found in the car Reynolds was located in was for a "[s]even six two by thirty-nine" caliber rifle, which he explained is "the same round as an AK47." During closing arguments, the prosecutor stated, while discussing the elements of armed robbery:

> Fourth, while in the course of committing the larceny the defendant possessed a weapon designed to be dangerous and capable of causing death or serious body injury.

> Ladies and gentlemen, this gun fires the same round as an AK47. It's the most popular widely used military rifle in the world.

Here, the evidence established that the rifle used in this case fired the same ammunition as an AK47. The prosecutor's single isolated comment to which Reynolds objects was supported by evidence admitted at trial and was made within the context of describing the elements of armed robbery, which included the element of use of a weapon designed to be dangerous and capable of causing death or serious bodily harm. The prosecutor's comment that the rifle used in this case used the same ammunition as an AK47 and that militaries use AK47 rifles appears to have been designed to infer that the rifle was capable of causing death or serious bodily harm. The prosecutor is not required to state an inference in the blandest possible language. *People v Unger*, 278 Mich App 210, 239; 749 NW2d 272 (2008). Because the prosecutor's comment was supported by facts in evidence it was not improper.

## III. SENTENCING

Reynolds concedes that he was resentenced within the correct recommended guidelines range, but argues that he is entitled to be resentenced because, under *Lockridge*, 498 Mich at 365, 391-392, his sentence is not reasonable. However, only sentences that *depart* from the guidelines recommended minimum sentence range are reviewable for reasonableness. *Id*. at 392 ("[a] sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness" [emphasis added]). "*Lockridge* did not alter or diminish MCL 769.34(10)."[18] *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016). Because Reynolds' sentence was "within the appropriate guidelines sentence range," MCL 769.34(10), this Court must affirm Reynolds' sentence. *Schrauben*, 314 Mich App at 196 n 1.

---

[18] MCL 769.34(10) provides, in pertinent part: "If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."

In Docket No. 330802, we affirm Lay's convictions and vacate his sentence and remand for resentencing.  In Docket No. 331143, we affirm.  Jurisdiction is not retained.


/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro